UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

**FILED**

NOV 1 6 2009

TERESA L. DEPPNER, CLERK
U.S. District Court
Southern District of West Virginia

MIGUEL ANGEL DELGADO                    34388

_____        _____

_____        _____

_____        _____

*(Enter above the full name of the plaintiff*        *(Inmate Reg. # of each Plaintiff)*
*or plaintiffs in this action).*

**VERSUS**            **CIVIL ACTION NO.** 2:09-1252

*(Number to be assigned by Court)*

DAVID BALLARD,

CLARENCE J. RIDER,            JURY TRIAL
REQUESTED
JAMES McCloud,

Charlene Sotak

*(Enter above the full name of the defendant*
*or defendants in this action)*
✱ Sued in their Official and Individual Capacity

**COMPLAINT**

I.    **Previous Lawsuits**

A.    Have you begun other lawsuits in state or federal court dealing with the same
facts involved in this action or otherwise relating to your imprisonment?

Yes _____        No ✗

1

B.    If your answer to A is yes, describe each lawsuit in the space below.  (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, using the same outline).

    1.    Parties to this previous lawsuit:

       Plaintiffs: _____ N | A _____

       _____

       _____

       Defendants: _____ N | A _____

       _____

       _____

    2.    Court (if federal court, name the district; if state court, name the county);

       _____

_____

    3.    Docket Number: _____ N / A _____

    4.    Name of judge to whom case was assigned:

       _____

    5.    Disposition (for example: Was the case dismissed?  Was it appealed? Is it still pending?

       _____

_____

    6.    Approximate date of filing lawsuit: _____

    7.    Approximate date of disposition: _____

II.     **Place of Present Confinement:** Mt. Olive Correctional Complex

    A.     Is there a prisoner grievance procedure in this institution?

        Yes ✓       No _____

    B.     Did you present the facts relating to your complaint in the state prisoner grievance procedure?

        Yes ✓       No _____

    C.     If you answer is YES:

        1.     What steps did you take? Followed the 3 step grievance procedure for each issue raised.

        2.     What was the result? Every single grievance denied

    D.     If your answer is NO, explain why not: _____

III.    **Parties**

(In item A below, place your name and inmate registration number in the first blank and place your present address in the second blank.  Do the same for additional plaintiffs, if any.)

    A.     Name of Plaintiff: Miguel Angel Delgado

        Address: 1 Mountainside Way, Mt. Olive, WV  25185

    B.     Additional Plaintiff(s) and Address(es): NONE

(In item C below, place the full name of the defendant in the first blank, his/her official position in the second blank, and his/her place of employment in the third blank. Use item D for the names, positions, and places of employment of any additional defendants.)

C.    Defendant: David Ballard

is employed as: Warden

at MOCC, 1 Mountainside Way, Mt. Olive, WV 25185

D.    Additional defendants: Clarence J. Rider, Religious Services Coordinator @ MOCC.

James McCloud, Captain and Segregation Commander @ MOCC

Charlene Sotak, Inmate Grievance Coordinator @ WVDOC
112 California Ave. Bldg 4, Room 300, Charleston, WV 25305

**IV.    Statement of Claim**

State here as briefly as possible the facts of your case. Describe how each defendant is involved. Include also the names of other persons involved, dates and places. Do not give any legal arguments or cite any cases or statutes. If you intend to allege a number of related claims, set forth each claim in a separate paragraph. (Use as much space as you need. Attach extra sheets if necessary.)

SEE PAGES ATTACHED TO THESE FORMS —

Section III, page 10

4

**IV.    Statement of Claim (continued):**

SEE   ATTACHED  –

_____

_____

_____

_____

_____

_____

_____

_____

**V.    Relief**

State briefly exactly what you want the court to do for you. Make no legal arguments.
Cite no cases or statutes.

SEE   ATTACHED  –

Section V, page 69

_____

_____

_____

_____

_____

_____

_____

**V.    Relief (continued)):**

_SEE    ATTACHED_

**VII.    Counsel**

A.    If someone other than a lawyer is assisting you in preparing this case, state the person's name:

NONE

B.    Have you made any effort to contact a private lawyer to determine if he or she would represent you in this civil action?

Yes _____         No _X_

If so, state the name(s) and address(es) of each lawyer contacted:

NONE  -

If not, state your reasons:  I had contacted numerous attorneys and prisoners' rights groups in the past for a civil action filed in the N. District and no one wanted to help in any way.

C.    Have you previously had a lawyer representing you in a civil action in this court?  Had an attorney appointed in Northern District for settlement talks, see 3:04 CV 29

Yes _____         No _X_

If so, state the lawyer's name and address:

_____

_____

Signed this **29** day of _October_____, 20_09_.

_Myuel Angel Delgado_____

_____

_____

_____

Signature of Plaintiff or Plaintiffs

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _October 29, 2009_____.
                    (Date)

_Miguel Angel Delgado_____
Signature of Movant/Plaintiff    Pro Se

*JURY TRIAL REQUESTED*

_____
Signature of Attorney
(if any)

✗ ATTACHMENT TO FORMS PROVIDED BY COURT

## I. COMPLAINT

1. Plaintiff, MIGUEL ANGEL DELGADO, pro se, for the complaint, states as follows:

This is a civil action for injunctive, declatory and compensatory relief pursuant to 42 U.S.C. Section 1983 and 42 U.S.C. Section 2000cc et seq., to redress the deprivation, under color of state law, of rights secured by Free Exercise Clause and the Establishment Clause of the First Amendment as well as the Equal Protection Clause and the Due Process Clause of the Fourteenth Amendment of the United States Constitution which embodies a minimum level of protection of plaintiff's right to practice and freely exercise his Taino-Arawak Native American Religion.

## II. Parties, Jurisdiction, and Venue

2. Plaintiff Delgado is a West Virginia state prisoner, DOC No. 34388, and is serving a sentence of life without parole. Plaintiff is currently incarcerated in Mount Olive Correctional Complex located at One Mountainside Way, Mount Olive, WV 25185, in Fayette County.

3. Plaintiff was at all relevant times cited herein an adult U.S. citizen and is fully competent to testify as to the matters alleged herein.

8

4.7. Defendant David Ballard was at all relevant times hereto Warden of MOCC. As Warden of the prison, defendant manages its day to day operations and executes its policies. He is sued in his individual and official capacity.

5.10. Defendant Clarence J. Rider was at all relevant times hereto the chaplain and Religious Services Coordinator for MOCC. As such, Rider plans, directs, and coordinates all aspects of religious programs and services, including assuring equal status and protection for all religions. He is sued in his individual and official capacity.

6.9. Defendant James McCloud was at all relevant times hereto a corrections officer at MOCC with a rank of Lieutenant, and later, Captain. As such, Capt. McCloud was a Segregation Commander in the Control Unit of MOCC and responded to the relevant inmate Request Form and Grievances. He is sued in his individual and official capacity.

7. Defendant Charlene Sotak was at all relevant times hereto the Inmate Grievance Coordinator for WVDOC. As such, Ms. Sotak responded to my grievances at issue, denying each one as a final response in the grievance process. She is sued in her individual and official capacity.

8. Plaintiff's claims for injunctive relief are authorized by 28 U.S.C. Sections 2283 and 2284 and Rule 65, Federal Rules of Civil Procedure.

9

9. This cause of action arose in the Southern District of West Virginia. Therefore, venue is proper under 28 U.S.C. Section 1391(b)

10. This court has jurisdiction over this action pursuant to 28 U.S.C. Sections 1331 and 1343(a).

III. Statement of Claims

11. Plaintiff realleges and incorporates by reference paragraphs 1 through 10 herein.

12. At all relevant times herein, defendants were 'persons' for purposes of 42 U.S.C. § 1983 and acted under color of state law to deprive plaintiff of his constitutional right to freely and meaningfully practice and exercise his Taino religion.

13. Plaintiff has standing as a state prisoner to invoke the standards and protection of 42 U.S.C. § 2000cc et seq., the Religious Land Use and Institutionalized Persons Act (RLUIPA) because WVDOC/MOCC accepts funding from the federal government.

14. Defendants Ballard, Rider, McCloud and Sotak acted individually and in concert to substantially burden plaintiff's right to freely exercise and practice his sincerely held religious beliefs in a program or activity that receives federal financial assistance, in violation of 42 U.S.C. § 2000cc et seq.

10

15. Defendants Ballard, Rider, McCloud, and Sotak substantially burdened plaintiff's right to exercise his Taino beliefs. The imposition of the burden was not in furtherance of a compelling governmental interest nor was it imposed using the least restrictive method of furthering any alleged interest put forth to justify the substantial burden.

16. Defendants Ballard, Rider, McCloud, and Sotak violated the Establishment Clause and Free Exercise Clause of the 1st Amendment by protecting, proselytizing, and favoring the practice of other mainstream religions, especially Christianity, by granting those inmates greater rights and privileges in the exercise of their beliefs while placing outrageous and blasphemous restrictions on plaintiff's exercise of his religion which has caused plaintiff to suffer a spiritual death and a virtual loss of faith.

Specifically, defendants seized and destroyed plaintiff's tobacco, denying plaintiff the spiritual need to smoke tobacco daily as a ritual necessary to communicate with the spirits.

Defendants have denied plaintiff the need to grow his hair long in the back while maintaining the rest of the hair short.

Defendants have denied plaintiff the need to posses his stereo and all his compact discs full-time to listen, sing and dance in accordance with Taino spiritual beliefs.

Defendants have denied plaintiff any right to correspond with any Latino or Taino organizations or religious groups.

Defendants have denied plaintiff's requests for assistance in contacting a Taino organization or leader for spiritual guidance, advice or religious literature.

11

17. Defendants Ballard, McCloud and Sotak violated plaintiff's 1st Amendment right to petition the government for redress of grievances by retaliating against plaintiff for filing multiple grievances (in an attempt to protect his religious rights), by seizing and destroying plaintiff's mail, magazines and filing exaggerated and discriminatory disciplinary charges against plaintiff to punish in an attempt to silence.

18. Defendants Ballard, Rider, McCloud and Sotak have violated plaintiff's 14th Amendment right to Equal Protection by discriminating against plaintiff because of his race, heritage, language, culture and spiritual beliefs, which is fully described in Statement of Facts.

Defendants Ballard, Rider, McCloud, and Sotak also violated the Due Process Clause of the 14th Amendment by denying plaintiff meaningful process. MOCC/WVDOC has "Religious Assistance Request Forms", "Inmate Request Forms" and the "Inmate Grievance Process", but all of these are meaningless because there are no independant or uninterested parties to review these. The same persons who are denying plaintiff's religious freedom are the same persons who respond to the request and grievances and it impossible for them to overrule themselves and the policies they created and enforce.

19. Defendants Ballard, Rider, McCloud and Sotak have violated the American Indian Religious Freedom Joint Resolution Public Law 95-341, dated August 11, 1978

12

## IV. Statement of Facts

20. Plaintiff is a Puerto Rican National serving a sentence of life without parole in MOCC. Plaintiff is a sincere believer and does practice the religion of the Taino-Arawak Indians of Puerto Rico.

   <u>See</u> "Affidavit on Plaintiff's Religious Beliefs & History of The Taino People" which is attached hereto.

21. Since my arrest in June 19, 2001, I have never declared any association to any religion to any jail or correctional staff. All answers to questions about my religion was "none".

   I have always been Taino, just was not fully practicing it, until I arrived in MOCC and was exposed to the anti-Latino atmosphere and absolute culture shock.

22. Since my arrival in MOCC in September, 2004, I became aware that I was the only Spanish speaking Latino in the general population. For a brief period there was another Puerto Rican, Miguel Quiñones, but he was transfered out shortly after serving over two years on Ad-Seg.

   There was one Mexican, Arnoldo Manguia, but he was kept on "Classified" status locked in a double cell with someone he could not communicate. Manguia's offense was that he could not speak English.

   There is one other Puerto Rican here, Jose Ortiz, but he is on Ad-Seg, for what reason, I don't know, but I bet it has something to do with being Latino and being non-violent.

23. This prison is populated by mostly whites, since WV is 97% white,

- 13 -

it only makes sense. However, being the only Latino in population was and is very difficult. My Unit Team repeatedly double-celled me the worst possible black and white cell mates knowing full well I would not get along with them because of cultural and racial differences.

24. The culture shock is exacerbated by the fact that there is no Spanish radio station or television channel. I requested the prison contact the cable provider for a Spanish Culture TV channel such as Telemundo or Univision. MOCC has BET for the blacks and CMT for the whites and nothing for Latinos.

25. The prison and Commissioner denied my request for Spanish Television channels. I became very angry and depressed. I was fortunate at one point to be assigned to a single cell and I left my cell only to eat and for brief periods. I still cannot imagine never experiencing any Puerto Rican culture. For awhile I really did consider killing myself.

26. I expressed these feelings of culture shock to my attorney and he did buy me a Sony CD Walkman and sent me $145.00, which I immediately used to purchase numerous Salsa (Latino-Afro-Caribbean music) Cds.

When I heard the music of my country, the story telling lyrics, the rythms of Indian & Afrean instruments, I became so overwhelmed with pride, joy and relief I just broke down and cried. I cried and I prayed to my ancestors, to my mother, seeking strength and guidance. I knew that if could not be with my own kind, or experience any richness of my culture, I would work hard to establish a spiritual bond with my ancestors because I needed to belong to something that was

14

mine. I decided then to worship the way my native ancestors did, with music, dance, singing, thanksgiving, prayer, and other rites. In essence, I became a Tribe of One Taino.

27. I hesitated to ask MOCC for help regarding my religion, knowing how racist the administration and the guards are and I remained content to go to my cell and put on some music and dance a little, burn some tobacco for the spirits as an offering, smoke a hand rolled cigarette or cigar and say a prayer, sent to the creator and the spirits with the help of the smoke.

28. I wrote to various Latino organizations seeking detailed information on Taino religious customs, but I was not too successful. I knew that asking Chaplain Rider would be a waste because he is pro-christianity and anti everything else. I also knew that MOCC was anti-Latino.

On July 7, 2006, 3 Corrections officers in the Control Unit of MOCC assaulted me with colorful racial slurs, and one, Denver Russell, spit chewing tobacco on my chest. The warden at the time, McBride, responded to my grievance by informing me that an investigation did reveal that my allegations simply were not true. The 3 guards received promotions and they go out of their way to harass me.

29. If I could be racially assaulted and spit on just for being Latino in an all-white prison, what would happen if I suddenly announced I was a descendant of the first American Indians to encounter Columbus and that I required special privileges to practice my religion? I was afraid to find out the answer and decided that even though I

desperately wanted to experience a more meaningful method of worship, I remained content with my simple routine of the expression of my sincerely held beliefs.

30. Rumors began circulating that there would be a tobacco ban. Finally, memorandums started being posted to announce that as of March 1, 2008, MOCC inmates would no longer be allowed to use or possess any tobacco, while staff would still be allowed to possess and use tobacco.

I am a cigarette smoker and the tobacco ban would hurt me personally and spiritually. I hoarded enough tobacco to last me several months and decided to declare to the Chaplain that I was Taino Native American to maintain weekly tobacco access for religious reasons.

31. On May 12, 2008 I officially announced to the chaplain that I was Taino-Arawak Native American by submitting a "Religious Accomodation Request Form" and a "Religious Assistance Fact Sheet" and requested I be allowed to purchase a blanket, beads, necklaces, feathers, smoking pipe, tobacco and herbs. I also requested exception from the hair length restriction and asked that MOCC provide a religious advisor to spiritually guide me.

Neither of these two forms have been formally acknowledged to this date.

32. When I informed the chaplain I was Taino-Arawak, at the time, inmates practicing the Native American religion were allowed to pray out-doors with tobacco once per week but that quickly changed because alot of inmates began to sign up for the Native American religion. Instead of

16

giving us more time for worship, the christian prison administration began to place greater limitations and restrictions. I even have to sign a Native American Religious Service Attendance Record form.

33. On May 14, 2008 I was placed in punitive segregation for matters not related to this action. In the Control Unit AKA lock up, there is a Unit Team Request Form which must be used for any and all communication with staff in the control unit. I began sending the request form asking for a catalog to order my pipe and tobacco. I also asked the unit team to get me an approved copy of the Religious Assistance Fact Sheet and Religious Accomodation Request Form.

Over 30 days went by before I was given access to the Crazy Crow Trading Post catalog and my first order was rejected by the chaplain's office because I ordered items not allowed.

34. I was forced to purchase a tobacco pipe even though it is Taino custom to smoke loosely rolled tobacco. I told Ryder that not all Native Americans practice or believe the same things. He told me "his source" for Native American religion told him a pipe must be used and that if I wanted to smoke I would have to buy a pipe.

35. On June 19, 2008 Ballard posted a memo to notify the Native Americans that instead of once a week for tobacco prayers, it would be inmates with last name starting A-K one week and L-Z the following week.

Ballard stated in this memo that about 80 inmates are now claiming to practice the Nat. Am. religion and that MoCc has a compelling governmental interest in controlling the introduction of contraband into the inmate population.

17

This is absurd because all staff members are allowed to bring tobacco onto the prison grounds. At least one guard was fired for giving inmates cigarettes, other staff had their cigarettes "disappear", at least one inmate's tobacco stored in the chaplain's office also disappeared. If staff can possess tobacco for personal reasons, why can't I?

36. On July 31, 2008 I finally received my pipe and tobacco after not being able to exercise my religion for over two months. At the same time, staff are blatantly chewing tobacco and smoking on prison grounds, and even in restricted areas, as reported in the Register-Herald in an article about the smoking ban dated July 28, 2009

37. On August 1st, 2008 Rider posted a memo stating that Native American tobacco prayers would now be allow only once per month. Meanwhile, the so-called christians have almost daily access to the chapel and the defendants will not provide a Nat. Am. spiritual advisor nor any literature to guide us. They keep pulling restrictions for Nat. Am inmates out of a hat.

38. On August 1st, 2008 Ballard issued yet another Operational Procedure #5.08 regarding Nat. Am. Prayer service. In this new restrictive version, Ballard claims that because tobacco which is stored in the chapel has been found in the possession of inmates on the yard and because tobacco being stored in the chapel has gone missing, I have to suffer the consequences of other inmates' actions and staff incompetence.

Ballard claims we can use a tobacco pipe without tobacco and this does not pose a substantial burden on the exercise of the Nat. Am. religion. This is the most retarded thing I have ever heard in my entire

18

Without the tobacco and the smoke, how are my prayers going to make it to the Creator and the spirits I worship? What am I supposed to do, pretend I am smoking some invisible tobacco? I am not a Taino mime.

39. This August 1st, 2008 policy also states that natural tobacco will no longer be allowed, only tobacco-blends. This poses a substantial burden on the exercise of my Taino religion because I must use natural tobacco.

This policy also states that any Nat. Am. inmate found introducing tobacco to the inmate population will loose tobacco for 3 months for the 1st offence, 1 year for the 2nd offense, and permanent loss for the 3rd offense.

However, no such punishments are provided to non. Nat. Am. inmates, such as, if a Christian homosexual gets caught with a penis in his mouth, he doesn't face any "religious" sanctions. Or, if a Muslim inmate gets caught eating or possessing pork, he doesn't face any "religious" sanctions.

Access to tobacco limited to once per month is insane. Therfore, I am allowed to worship only once per month. To balance out the insanity regarding religious expression, every Bible and Koran should be confiscated and provided once a month; all forms of worship must be limited to once monthly.

40. August 5, 2008 was the first time I was allowed to Publicly use tobacco for my prayers. Mocc calls the gathering a "service", but I don't see it; there is no religious leader to inspire us or teach us, no preaching, no music, no anything. The "service" is just a small group of inmates trying to get a light from one lighter while the pipe keeps going out.

At one time, Nat. Am. "services" were held on the grass behind the chapel, but as the amount of Nat. Am. participants grew, greater restrictions

were placed on us. Recently, the defendants decided to seperate us into two groups, those allowed to worship with tobacco, and those not allowed to worship with tobacco. The non-tobacco users stayed on the lawn, the tobacco users had to go into the outdoor visiting enclosure.

Inmates are not allowed to lead a "service", MOCC does not provide any Nat. Am. spiritual leaders. The defendants repeatedly claim they have tried to contact Nat. Am. leaders but say they are unable. The defendants however are able to reach Nat. Am. spiritual leaders (as they claim) for advice on the restrictions placed on us. Repeated requests from me for printed documentation concerning Nat. Am. religious rites, specifically the Tainos, have been denied.

It is evident that the defendants disfavors any sect of the Nat. Am. religion when it forbids inmates from leading a "service", refuses to provide any form of spiritual guidance and even refuse to provide any meaningful Nat. Am. religious literature.

41. On August 5, 2008, I entered the enclosed visiting area and two guards were in there, as well as several inmates, who were all sitting and standing around one picnic table trying to get a light off of one lighter. I asked Chaplain Bob where was I allowed to purge and he asked what did I mean, when I explained to him that I needed to make myself throw up as part of my prayer ritual and he informed me that if I threw up outside intentionally, I would be charged with violating Rule 1.26 - Exposing Body Fluids. Disgusted and angry because these corrupt, racist, so-called Christians tell me how and when I can worship and can punish me for exercising my beliefs, I wrapped the little bit of tobacco I was given into a piece of paper and left the area, went back to my cell and worshipped in my own way. Despite what ~~may say about~~ the defendants may scream and shout about "security", MOCC did not crumble as a result.

20

42. On August 7, 2008 I submitted grievances concerning being denied daily natural-tobacco for prayer, and for smudging ceremonies.

In part, the grievance states: It is my belief that I am being prohibited from fully and properly practicing my American Indian religious beliefs by the policies and procedures enacted by the (defendants) by their prohibiting me from obtaining pure Indian tobacco at a reasonable cost that is commensurate with "street prices" and utilizing said tobacco in the sacred rites of my religious practice on a daily basis.

Defendants asserted that Mocc has a compelling governmental interest to prevent the introduction of contraband tobacco into the inmate population, that tobacco used in the Native American prayers has been discovered on the yard in inmates possession, that it is necessary to restrict and supervise the use of tobacco. Defendants claimed "A less restrictive means of controlling this tobacco from being introduced into the population, other than banning it all together, is to permit its use but regulates it more closely. This does not impose a substantial burden on the exercise of your belief since you are still permitted to attend the scheduled Nat. Am. prayer service even though you are only permitted to use tobacco once a month".

These assertions are clear descriptions of "substantial burdens" I am not a Native American Mime, I am a Native American Taino. I need tobacco to pray. No tobacco = No prayer. Tobacco is sacred and important to me as a Taino and I need pure tobacco for worship, not the tobacco "mixtures" which Mocc makes me purchase. Allowing only once a month access to tobacco is equivalent to allowing me to eat only once a month. Allowing me to attend a so-called no-tobacco service is equivalent to allowing me to visit the dining room but forbid me from eating.

Further, the defendants do not adequately explain how once a day versus

21

once a month tobacco access prevents the introduction of contreband tobacco or how the tobacco found on other inmates is related to my religious practices.

The "smudging" grievance is similar. Smudging for the Taino is somewhat different then for the Northern American Indian, the purpose or function may be similar, but the manner is different. Smudging is a rite of purification for the Taino. Natural tobacco is used as an offering to the spirits and to appease the Gods. Usually, the Taino uses a cigar which smoke purifies the person praying and cleanses him and the rite satisfies the spirits and Gods which in turn enhances and enriches the ceremony and the person praying. The smoke is not to be inhaled but blown on and around the worshipper to cleanse and purify himself, other smoke is blown and offered toward Yaya, the Creator, the Cemies, and the Gods, or Spirits. The Spiritual value of this rite is priceless. However, the defendants assert that I cannot and will not ever possess any cigars, rolled tobacco, or natural tobacco, although they refuse to explain why in writing. The end result is that I am truly unable to exercise my sincerely held religious beliefs and am suffering irreparable harm to myself and my spiritual well-being.

The defendants insist I must forget about worshipping the Taino way and follow the traditions of the Northern American Indians for any Nat. Am. ritual, including "smudging". For the smudging ritual, according to Attachment #2 of Operational Procedure #5.08, the items allowed are Sage, Sweet Grass and Cedar Shavings to be used with a Conch Shell or Smudge Pot. These items have zero religious significance or spiritual value to me or my religious beliefs. I can burn Sage, sweet grass and cedar shavings but not natural, rolled tobacco or cigar? I don't see the logical "security" connection or difference which justifies banning one or allowing the other, not excluding the fact that I am prohibited from exercising my Taino beliefs.

22

43. On August 8, 2008 I submitted a grievance seeking access to fresh tobacco on a daily basis, access to leaf tobacco to roll cigarettes to smoke as my ancestors did.

I offered the following argument : It is my sincerely held religious belief to smoke rolled tobacco but MOCC/WVDOC insists I cannot do this. I am allowed only a small bit of tobacco to smoke in a prayer pipe once a month. This facility has lumped all the Nat. Am. into one group, placing absurd restrictions on us all while at the same time assuming the belief of one is the belief of all the members of the Native Americans. Just as Christianity has many sects or denominations, so does Nat. Am. tribes. It is very unfair to me that MOCC/WVDOC has no consideration for my Taino-Arawak beliefs or religious practices without even first attempting to ascertain my beliefs, practices, customs, or sincerity thereof.

"In Thomas v Review Board, 450 U.S. 707 (1981) Religious freedom, the Court said "is not limited to beliefs which are shared by all of the members of a religious sect". It is my religious belief and practice to smoke tobacco and offer tobacco to the spirits and possess tobacco on a daily basis. MOCC/WVDOC claims tobacco access to inmates has to be severely controlled and it must be regulated in a way to prevent inmates access to tobacco. Any argument or defense offered by MOCC/WVDOC in this regard is defeated by the fact that WVDOC policy Directive 136.00 permits staff to carry on their persons on facility grounds and there is evidence that staff have given tobacco to inmates and according to the anonymous' corrections officer quoted in the July 28, 2008 Register-Herald article, staff are breaking the rules by using tobacco while on duty in restricted areas. As much as MOCC/WVDOC would have everyone believe, MOCC employees are not infallible. Staff have stolen money from the Inmate Benefit Fund, have facilitated

23

an inmate's escape, have had sexual relationships with inmates, have sold tobacco to inmates, etc. etc. etc. The list of corrupt behavior is extensive. If staff can possess tobacco, thus creating a potential test of employees' integrity, which several have already failed, then I, too, should have access to tobacco on a daily basis.

"I cannot exercise my right to practice my religion without fresh tobacco. The restrictions placed on my religious practices by this christian administration is unreasonable and are not the least restrictive. If the the so-called christian inmates can have access to the chapel on a daily basis, then I must be allowed to practice my religion on a daily basis".

I received the exact same response to the grievance described in Paragraph 42, above.


44. On August 14, 2008 I submitted a Interlibrary Loan Request through the MOCC library for 2 books about Taino culture and religion. The MOCC library does not have any books on Tainos. The 2 books are titled "Tainos: The People Who Welcomed Columbus" and "The Tainos: Rise and Decline of the People Who Greeted Columbus", by Francine Jacobs and Irvin Rouse, respectively.

When said books arrived, they were refused and returned because I was on "Loss of Privileges", this despite the fact that the librarians were clearly aware that I was allowed to receive these 2 religious books while I was in segregation. I have not filed a grievance on this issue and the librarian are not defendants. This is stated to illustrate the anti-

45. Taino/Latino atmosphere in one of the many facets of prison life in MOCC.

24

45. On August 28, 2008  I filed a grievance requesting that MOCC inform me how I, a Taino, can pray without tobacco and how tobacco access once a month does not place a substantial burden on my religious exercise.

I also stated in the grievance: If this administration knows something about Taino-Arawak religious customs that I am not aware of, I would love to be enlightened. Please tell me how I, a Taino, can pray without tobacco?

Praying requires tobacco and there is no way around it. MOCC has cheapened and mocked my Taino beliefs by claiming there is no substantial burden imposed on my beliefs.

MOCC claims that Native American services is a staff intensive activity, but if there is enough staff to provide other staff smoke breaks, and enough staff to have a long Kairo (Christian) 3 day festival, then there must be enough staff for Nat. Am. services. MOCC has also <u>greatly</u> exaggerated the so-called security risk involved because MOCC is the <u>safest</u> maximum security prison in the entire USA.

The initial response can at best be described as a non sequitur. Defendants Ballard and Sotak denied my grievance without comment.

46. On August 28, 2008  I filed a grievance regarding religious exemption from MOCC hair length. On May 12, 2008 I submitted an "Inmate Religious Accomodation Request Form" to the Chaplain's Office thru which I requested exemption from the MOCC hair length restriction so that I may grow my hair in accordance with my sincere religious beliefs. The form was no acknowledged in any way. According to my religious beliefs I am required to keep my hair short with a long

25

hank at the back of the head, otherwise known as a Kouplock by other American Indians.

This is not a security risk because MOCC is possibly the safest maximum security prison in America. Any claim by this christian administration that maintaining a Kouplock would be a security threat would be incredibly false. This administration continues to cite "security interest" while ignoring the fact that this maximum security prison is basically the safest prison in America because violence and serious threats are virtually non-existent here. Additionally, Female WVDOC inmates are allowed to grow their hair long and are even allowed to wear make up.

I should not have to choose between my religious beliefs and adhering to the grooming policy. MOCC policy allows religious exemptions to the grooming restrictions but MOCC refuses to grant religious exemptions.

The response to the grievance was ridiculous. Defendants claim that grooming standards are needed for "quick and easy identification of inmates" but do not explain why females are allowed to wear make up, grow long hair, and even color their hair or how this does not affect identification of female inmates

Defendants claim contraband could be hidden in long hair. If I did need to hide something so small that could be hidden in my hair, I would just hide it easily elsewhere. This is the safest prison in America; there is virtually zero violence here and the defendants are greatly exaggerating imaginary threats

The defendants also claim "Another issue involves gang activity. Hairstyles are often an identifying mark for gang affiliation. A standard grooming policy helps to prevent that activity". This statement may

26

be true in other prisons but there are no gangs in MOCC, but this administration continues to falsely claim MOCC has gang problems to possibly bolster state and/or federal funding.

I am not in any gang. I have one large and very noticeable scars on each side of my face. I have never heard of a gang that wears their hair like Taino Indians.

I have begun to grow my hair out to express my religious beliefs and if MOCC sees fit to punish me and harass me more than they presently do, so be it.

47. On September 8, 2008 I filed a grievance because the defendants are denying me my right to correspond with Taino - Arawak legal counsel and religious leaders. I have written to numerous Taino groups and I never receive any mail from any of them nor have my letters been returned to me.

As of this writing, I have written to 5 different Taino groups but no mail has been provided to me

The response was a typical denial, but the fact remains I do not receive mail from any Taino group.

48. On September 8, 2008 I sent a letter to the librarian asking about books on Taino people which I had yet to receive. I was on "Loss of Privileges" at the time and inmates on LOP are not allowed to request library books. MOCC/WVDOC is one of the few prisons in America which uses the denial of books as punishment. However, I had permission from Capt. Matheney and Sgt. Meadows to receive Taino religious books from the library, and on 9-16-08 I received confirmation from

27

acting librarian Mark Crawford that my books were ordered and they would be sent to me when they arrive.

On 10-14-08 I sent a note to Capt. Matheney reminding him that he'd previously authorized for me to receive religious books on Taino Indians and requested he inform the library I could receive books on Taino Indians. Capt. Matheney responded by informing me he "will do one better, I will send a copy of this to the library". However, Acting Librarian, Mark Crawford, who had previously assured me I would receive the books when they arrive, is now claiming he needs permission from the Chaplain on which books I can have.

This "passing the hot potato" is Capt. Matheney's and Mark Crawford's way of denying me the books while passing the blame; Matheney can blame it on Crawford and he in turn can blame it on the chaplain, but this is truly ridiculous because Matheney is the Segregation Commander and he has the final decision on whether or not I can receive books. His word is final, in fact, even items that are allowed can and are routinely denied by the Captain, just because he can. For example, according to Operational Procedure 3.30, inmates in the Control Unit are allowed to purchase and possess a toothbrush from the Commissary, but Matheney does not allow us a regular toothbrush, only a mini toothbrush provided by the State.

Another example is that Capt. Matheney does not allow me to possess religious items in my cell such as a tobacco pipe, which is allowed in-cell, even in the Control unit pursuant to Attachment #2 of O.P. 3.30.

The 2 Taino Indian books were received and returned on 9-22-08 and 9-26-08.

49. On September 17, 2008 I submitted a grievance against Corporal Joshua Taylor. The grievance described the following: On Sept. 7, 2008 Cpl. Joshua and corrections counselor Jessica Miller appeared at my cell door in Q1-525 and asked me if I wanted to go 'outside' for Native American prayers. I asked Miller if someone had retrieved my prayer pipe. Miller smiled and said 'Maybe, maybe not'. I said, 'If my pipe is not there, I do not want to go'. Miller said my pipe and tobacco are there for me. I detected no malice from Miller, however, Taylor said, 'If you can't smoke you are not going to pray'. I said, 'That is correct, tobacco is a necessary item in my Taino religion'. Taylor said, 'Since when are you Native American?' I replied, 'Since forever'. He stated, "You are not Native American, everyone is Native American now since they took the tobacco out of here'. I did not respond. When we arrived at the rec. area, Taylor took my pipe out of the bubble wrap, looked in the bowl, and gave it to me, I told him he is not allowed to touch my pipe, he said, 'This is the Control Unit we search everything'. I told him he was a racist. He smiled and said he was not a racist. I told him I haven't forgotten how Denver Russell, Donna Braenovich, and him (Joshua Taylor) assaulted me with racial slurs and Russell had spit chewing tobacco on me on July 7, 2006. When I filed a grievance (on that issue), it was claimed I was lying and the 3 officers ultimately received promotions. Anyway, Taylor let me have some tobacco, but when I asked him for a light, he refused to provide it, told me I had to wait for another inmate to come out who had a lighter or I would be S.O.L. I told Taylor I was not going back to my cell until I did my prayers. He said he did not care, that I had 20 minutes. He told me to go inside the rec. cage and he then showed me an orange lighter which he lit and smiled at me. Miller just stood there then they both left. I was sitting on the floor wait for an inmate to come with a lighter. Oscar Finley and some other inmate come in but neither had a lighter.

About 10 minutes later Taylor calls me over. He is laughing and says 'come get this lighter', he gives me the orange lighter, which Finley and I both used. After about 10-15 minutes Taylor starts yelling for me, I tell him I have not finished yet. He told me if I did not come he would write me up for contraband tobacco. I told him I had one hour to pray, he said I only had 20 minutes and that my time was up. He made me dump my tobacco on the ground and then I stripped out to return to my cell.

First I was interrogated about my beliefs, I was accused of not being Native American, that I claimed to be Nat. Am. just to smoke tobacco. Then I had my sacred pipe touched by Taylor, then he would not give me a light, after finally giving me a light, he interrupted my prayers to threaten me with a write-up if I did not leave, then made me dump half my tobacco from my bowl on the ground.

I told Taylor he was a racist and ignorant, that he demeaned and insulted me and my religious beliefs and that he had cheapened my time to pray and made it something dirty and obscene. He told me 'Thank you for participating in our Native American service'. I told him he could go f___ himself, that he was a f_____g racist and that I was going to file a racial/hate crime charge against him. He ask me if I wanted 'to go behind the glass again' (where all the mental health rejects are kept screaming and yelling all day and night). He said I was 'crying to get out from behind the glass last time you filed a grievance on me'.

I did not want to file a grievance on Taylor while I was in Q1 because I was afraid of what he could do to me and I was certain my complaints would fall on deaf ears. Therefore, I acted in a manner that would get me moved to Q2 by kicking my cell door and obnoxious with staff I would normally be courteous with. I know Taylor is a racist, spiteful, vindictive little man who has no qualms with abusing his authority over me to get even. Now that I have been moved to pod 6 (where more mental health rejects are housed) I file this grievance requesting he be investigated. (30)

Hopefully he will not be rewarded with another promotion.

50. On September 19, 2008 I received a response from Lt. Andrew Hill to my Sept. 17, 2008 grievance on Cpl. Taylor. Lt. Andrew Hill advised he "will look into the possible actions of Cpl. Taylor. Be advised in the future when filing paperwork on staff you are not insolent or insubordinate"

It is obvious that Lt. Hill is not concerned with truthfullness or substance but form instead.

On Sept. 25, 2008 Acting Warden Tim Whittington signed Kathy Dillon's response which stated "The allegations you have made will be looked into and action taken as deemed necessary", Granting the grievance as specified in Lt. Hill's response.

On 10-6-08 Charlene Sotak checked "Affirm Warden and Deny Grievance" in her response. Obviously, nothing was done regarding Cpl. Taylor and it is because this this administration is racist and supports discrimination against everything non-white and non-christian.

51. On Sept. 18, 2008 I sent a 5 page letter to Clarence Rider requesting he assist me in contacting a Taino religious leader to expand my personal knowledge, education, understanding, and commitment to the beliefs and principles of my religion. This request was made pursuant to Operational Procedure #5.08 which obligates the MOCC Chaplain to assist inmates in religious matters.

52. On Sept. 29, 2008 I received a response from Warden Ballard regarding my Sept. 18, 2008 5 page letter to Rider. In this letter he claims that I am suspect because I first declared to be Hispanic with no declared religion upon intake ignoring the fact that as a Puerto Rican I am of Taino descent and also ignoring the fact that even inmates that have declared themselves to be Native American from day one encounter religious discrimination from WVDOC/MOCC as well as I do.

(31)

Ballard States "The fact that you are now declaring to be of Taino Native American heritage and requesting special privilege in regards to tobacco is suspect since this information is only coming to light since MOCC went tobacco free."

This response was provided despite the fact that the Warden was aware, as I wrote in my 9-18-08 letter, that I never declared my religious affiliation because I was content smoking cigars and loose tobacco in the privacy of my cell to worship as often as I wished. But now, since the tobacco ban, I've had to put my religious affairs in the hands of corrupt christians who can't seem to control their own religious affairs, and they are going to tell me how I can worship.

As early as 3000 years ago Natives of Latin America used tobacco as medicine, as a hallucinogen and as offerings to the spirits they worshipped. When Columbus traveled to the Americas, he observed the Taino people of the Caribbean smoking tobacco loosely rolled in a tobacco leaf. The Taino people also smoked tobacco through a tube called a 'tobago', from which the word tobacco derives from. The defendants are very well aware of these facts, yet they tell me I have to mix 75% willow bark with a 25% tobacco mixture called Kinni-kinnick (which is a mixture of herbs, tobacco, and other additives).

Tainos have always smoked natural tobacco. We do not smoke herbs or tree bark or offer herbs or tree bark to the spirits for worship, yet the defendants tell me I have to utilize what they call a 'Traditional Native American tobacco mixture' despite the fact that I specifically informed them that there is no such traditional mixture and Tainos only use pure tobacco for religious purposes. I have to spend my own money on tobacco, but my tobacco that I was initially allowed to purchase was seized by the defendants because I did not purchase willow bark to mix it with despite willow bark not being relevant to the Taino faith. This is like ordering a Jewish or Muslim believer to purchase pork to mix with a non-pork meal and calling the mixture a traditional meal. However, Ballard, in his proud ignorance claims that this does not place a substantial burden on the

(32)

exercise of my religious beliefs despite the fact my religious beliefs forbid me from using the Warden's tree bark/tobacco concoction for worship.

Ballard cites a 'Taino religious Source' which he refuses to identify to this very day. Ballard claims this anonymous source discouraged the regular use of tobacco, and only recommended a monthly use. However, Ballard nor any of the defendants bother to explain what is the difference between allowing inmates to use tobacco/tree bark mixture versus tobacco.

In response to my request for religious assistance and information about Taino beliefs, Ballard advises "MOCC has no interest as an institution in researching your ethnic heritage. This is a personal, social, issue and it has no bearing on your religious requests. We will not pursue this for you".

This refusal to assist me with contacting a Taino religious leader and provide Taino religious written information is undeniable evidence that an anti-Latino and anti-Taino sentiment is alive and thrives in MOCC.

Warden Ballard also provides an address to which he suggests I write for information regarding Taino spirituality: The Cuney @ 4277 Verona Road, Verona, PA 15147. However, this is insulting. The fact remains that I have written to numerous Taino sources that I have never received any mail from, including The Cuney.

53. On October 10, 2008 I appealed Warden Ballard's 9-29-08 response to the WVDOC Commissioner. On 10-29-08 I received a response upholding the Warden's decision.

33

54. On October 6, 2008 I submitted a Inmate Religious Accomodation Request form pursuant to WVDOC Policy Directive 510.00, which is titled "Religious Services". I requested permission to possess my stereo and all my Puerto Rican/Salsa music Cds while on Administrative Segregation in exchange for surrendering my religious tobacco privileges. I attached a letter dated 10-08-08 and an Affidavit titled "Affidavit On Plaintiff's Religious Beliefs and History of the Taino People".

55. On October 24, 2008, Warden Ballard responded to my request for my stereo and all my Cds by advising me that I can only have my stereo and a one time selection of 3 Cds for 1 hour each week.

One hour a week is not nearly enough to satisfy religious Taino worship which consists of many hours, even several days. I accept the radio for an hour because it satisfies a secelar desire to listen to music.

In his response, Ballard claims stereos are no longer allowed and that any inmate that has a radio will lose the privilege if they have new disciplinary issues. This is partly untrue. Inmates on 3D status get to keep their stereo and if they lose the privilege, they eventually get the radio back.

Furthermore, Ballard claims MOCC follows postal guidelines, which is a lie. He advises that if the people I have written have not responded it is because they have chosen not to respond at this time. About 25 different people all decide not to respond. How convenient for MOCC.

56. On October 31, 2008, I appealed Ballard's 10-24-08 decision to my stereo and Cd request to the WVDOC Commissioner. On 11-20-08 I received a response from the Office of the Commissioner "upholding lower decision without comment.

57. I filed a grievance because my October 2008 issue of King magazine had not been given to me. I feared the harassment had begun. Mail has a way of disappearing around here. The response was that the magazine had been sent to the wrong housing location, was returned to the post office and had been sent to my current location. Satisfied with the response, I felt no need to appeal it. However, the magazine did not arrive and I filed a follow up grievance inquiring about the magazine. The initial response was that it never arrived in Q2, my current housing location. I appealed and the absurd response was that I should have appealed the previous response. The appeal was denied and I never did receive the magazine

58. On 11-24-08 I filed a grievance because I had been denied correspondence from the Puerto Rico Demographic Registry, which I wrote to requesting birth certificate applications. I wanted birth certificates for me, my mom and dad to the follow up with requests for my grand parents' birth certificates in order to prove my Taino lineage so MOCC could stop denying me the right to practice my religious beliefs.

    MOCC denied refusing me the letter in question, claiming that when mail is refused I would have been notified. This is false. Mail is refused all the time without notice.

    It seems very strange that I write to dozens of Taino / Latino groups yet I never receive any response.

59. On 11-24-08 I filed a grievance because MOCC continues to deny me access to mail from Puerto Rican/ Latino / Taino organizations I have written to, such as The Cuney @ Verona, PA.

    In a memo from Warden Ballard dated Sept. 29, 2008, he provided this address

35

suggesting I write to them for information regarding Taino spirituality. I wrote to them the same day. I've yet to receive a response. MOCC still denies discarding my mail. I do not expect this racist and corrupt prison administration to admit any wrongdoing.

60. On 12-1-08 I submitted a request for reconsideration of my stereo and CD request to Warden Ballard. Ballard had previously denied my request for my stereo and my CD storage case, granting me a mere hour with only 3 CDs. He responded on 12-4-08

The request was denied. Ballard claims one hour is enough time and that everyone in the segregation unit receives 1 hour. This is false. There is no limit on how much time anyone can worship in the privacy of their own cell, because I need to utilize my stereo and CDs is irrelevant. I am the only prisoner in MOCC that is limited to 1 hour of worship in his cell.

The Warden continues to ignore my request for my CDs and does not explain why 3 is the maximum amount of CDs I am allowed. I continue to explain to the Warden the importance of my music and its connection to the Taino faith yet he does not care that 1 hour is not enough.

61. On 12-20-08 I submitted an appeal to the Commissioner regarding the stereo and CD request described above in paragraph 60. On 1-14-09 I received a response, rejecting my documents for failure to comply with the grievance process. I have utilized this same format in the past without a problem, until now. I did resubmit.

62. On 12-2-08 I received a Property Seizure receipt for my tobacco leaf, over 1oz, which was seized because a new Religious Programs (O.P. 5.08)

36

operational procedure was in effect barring the use of natural tobacco for native American religious worship. The new procedure enacted by Ballard states that "there is no requirement that the pipe mixture include tobacco, though many inmates desire that tobacco be included in the mixture" The new tobacco mixture prescribed by the Warden is 75% Red Willow Bark mixed with 25% Kinnick Kinnick (a blend of herbs, willow bark and tobacco)

In the O.P. Ballard ignorantly and incorrectly claims that "this does not pose a substantial burden on the exercise of the Native American Religion since provision is being made to facilitate a prayer time and other means are available to practice that belief".

63.  On 12-3-08 I wrote a letter to the Warden and the Religious Advisory Committee urging them not to destroy my natural tobacco but allow me to continue using it at least until it runs out.

I specifically detailed the fact that as a Taino I must utilize only natural tobacco for communication with the spirits. The only non-tobacco item that can be mixed with the natural tobacco is Cohoba or Sot Weed (hallucinogens). I cannot use willow bark because it is not conducive for communications with the spirits and it is a foreign substance to the Taino faith. Forcing me to utilize willow bark is equivalent to forcing a Muslim or Jew to add pork to their meal and calling it a traditional Halal or Kosher meal.

I need a religious bail-out because MCCC has left me spiritually bankrupt.

64.  On 12-5-08 Ballard denied my request to exhaust my supply of natural tobacco. I appealed this decision to the Commissioner on 12-20-08, but on 1-14-09 I received a rejection of my documents for failure to comply with the grievance process although it has accepted this format in the recent past.

65. On 12-16-08 I sent a letter to the Warden and the Religious Advisory Committee asking several questions about the Warden's new tobacco policy and his false claims that no substantial burden exists on the exercise of my Taino religion while denying me the right to exercise any tenet.

In MoCC Operational Procedure 5.08, Warden Ballard asserts that 'There is no requirement that the pipe mixture include tobacco'. I asked Ballard for the full name and qualifications of the person or the persons that informed him that Tainos do not require tobacco for spiritual reasons.

I asked Ballard what authorizes him to order me to ingest red willow bark despite it being foreign to my faith. I asked Ballard several other questions about tobacco, but on 12-29-08 Ballard responded with the same response as before and ignored my questions.

Ballard insists that I practice the Native American Religion such as is practiced by North American natives. I continue to inform him that I am Taino, that I must use natural tobacco, that I cannot use his tobacco concoction and he repeatedly maintains that this forced religious indoctrination does not impose a substantial burden on my religious exercise.

66. I appealed Ballard's 12-29-08 response with a 12-29-08 letter to the Commissioner, However, on 1-14-09 I received a rejection notice from the Commissioner's office for failure to comply with the grievance process despite having used this format in the past without a problem.

67. I received a Property Seizure Receipt dated 12-2-08 from Brenda Brown because 1½ oz tobacco leaves were seized and destroyed on 1-5-09. I was allowed to purchase this tobacco for religious purposes but after Ballard's new O.P. 5.08 I could no longer exercise my religious beliefs.

68. On 2-5-09 I received a memo from C.J. Rider, the Religious Services Coordinator informing me that the small bag of Jeremiah Johnson tobacco that I had previously been allowed to purchase would be destroyed if I did not purchase 5 ounces of Red Willow Bark.

I had purchased this Kinni Kinnick tobacco not knowing what it was. I thought it was tobacco, but it was a blend of herbs and tobacco which I could not use for religious purposes.

69. I received a Property Seizure Receipt dated 2-4-09 because the Jeremiah Johnson tobacco I had previously been allowed to purchase was seized because I needed to purchase Red Willow Bark for the Chaplain to mix up and make an approved tobacco mixture which would be about 10% tobacco and 90% non-tobacco, which a Taino cannot use for spiritual reasons.

70. On 1-8-09 I filed a grievance because I have a subscription to Prison Legal News magazine and I had not received the December 2008 issue. I feared that the MOCC administration had begun to make my PLN magazines disappear in retaliation for filing grievances. My subscription expires on September 2010 and I have not had a problem receiving the magazines in the past.

The Warden's response was that I should write to the subscription dept. at Prison Legal News about my complaint. However, the initial response was that the post office does not record PLN magazines although it logs every other piece of mail. The post office staff claimed they do not know if any PLN came for me or not. How convenient for everyone.

However, I wrote to PLN about my missing magazine.

39

71. In early February 2009 I received a post card from Prison Legal News informing me that I should be getting my magazines, that I need to check with the prison mail room. By this time, my Jan. 09 issue of PLN had disappeared.

72. On February 9, 2009, I filed a grievance because my January 2009 issue of Prison Legal News has disappeared. I argued that PLN had sent me a postcard confirming I should be getting my magazines, that the problem is with the prison mailroom.

   Lt. McCloud (now a Captain) responded that per the post office my magazine had not arrived. The Warden denied my grievance.

73. About mid-February 2009 I sent a letter to Charlene Sotak, Inmate Grievance Coordinator, asking how can my grievances concerning my PLN magazines be denied when PLN confirmed they are sending the magazines to me yet they disappear while MOCC claims they are not being delivered here.

74. I received a memorandum dated March 2, 2009 from Ms. Sotak regarding my grievance about my January 2009 issue of PLN. The memo explains that this grievance, # 09-MOCC-Q2-69, has been remanded to the Warden with instructions that the post office attempt to locate my magazine.

75. On February 17, 2009 I filed a grievance seeking names and addresses of the tribes or tribal leaders or other source from which Warden Ballard ascertained that "There is no requirement that the

pipe mixture include tobacco", which he falsely claimed in his Operational Procedure 5.08 dated September 2008. The response from Lt. McCloud was "Mr. Delgado, send a letter to the Chaplain asking for this information" and the grievance was ultimately denied.

However, it is important to note that on 12-16-08 I did send a letter to the Warden and the Religious Advisory Committee asking this same question, but my question was ignored and instead I did receive a memo citing the same rhetoric concerning safety, security and governmental interests.

Warden Ballard did claim that other jurisdictions were consulted and one of those jurisdictions uses 75% red willow bark / 25% tobacco mixture.

However, Ballard refuses to name the "other jurisdiction". I did appeal the Warden's response, but it was rejected for failure to comply with the grievance process. Apparently, when I file a grievance asking about willow bark I am told to write a letter, but when I write a letter, I not only do not get answers, it is ultimately rejected for failure to comply with the grievance process. Is this what is meant by Catch-22? See paragraphs 65 and 66 above.

76. On February 17, 2009, I filed a grievance concerning the red willow bark which Warden Ballard prescribed to the Native American inmates for tobacco worship. I requested the carcinogenic/toxic value of the red willow bark, with a breakdown of its chemical components, its dangers, side effects, etc.

WVDOC policy mandates that inmates address only 1 issue per grievance and despite the fact that that the willow bark is only

41

one issue, Lt. McCloud falsely claimed in his response that I did address two issues in order to deny my grievance and ignore my question. The grievance was denied, affirming my belief that the grievance process is corrupt and beyond redemption.

77. On Feb. 17, 2009 I filed a grievance because the Warden claimed that 6 parts red willow bark and 2 parts tobacco mixture is a "Traditional Native American Pipe Mixture". I requested to be provided the names and addresses of all native American tribes or tribal leaders which the Warden knows or believes uses this so-called traditional mixture.

Lt. McCloud responded that this is two issues, that I can only address one issue. This grievance was ultimately denied despite the fact that I addressed only 1 issue.

78. On Feb. 17, 2009 I filed a grievance because Warden Ballard did prescribe red willow bark for native American prayers. This bark has medicinal properties; it has aspirin-like qualities and so it is used as a pain reliever, to reduce fevers, for headaches, neuralgia, hay fever and joint inflammation.

I requested to know what medical license or herbalist permit authorizes the Warden to prescribe this willow bark for native American prayers. Lt. McCloud responded that I need to write to the Chaplain for this information and my grievance was denied.

In my letter described in paragraph 65 above, I ask this same question. It was ignored and my appeal was denied for failure to follow the grievance procedures. By way of letter or grievance, any question is ignored, so much for truth in government.

42

79. On Feb. 18, 2009 I sent a Request Form to Lt. McCloud complaining to him about his retarded and false responses to my four grievances dated Feb. 17, 2009 in which he claimed I had addressed 2 issues and advised I need to write a letter to the Chaplain for the information.

In his response, he attached 3 memos from the Warden to me from previous requests concerning my stereo and tobacco use. Lt. McCloud falsely and incorrectly claimed that all the answers to my questions are in the 3 memos.

80. On Feb. 24, 2009 I sent a Request Form to Lt. McCloud addressing his response to my 2-18-09 Request Form (see paragraph 79 above) in which he claimed all the answers to my questions can be found in the three memos he sent me.

I argued that I am entitled to an answer to these 4 legitimate questions because they are about my religious freedom and decisions made by MOCC which greatly affect my right to exercise my religion. I complained that this racist administration refuses to answer my questions because MOCC does not have an answer which will cover up the fact that MOCC has forcibly indoctrinated the religious beliefs they have concocted upon me and have left me spiritually bankrupt by disallowing me the right to meaningfully exercise my religious beliefs. I informed McCloud that it is difficult to respect him when he keeps lying to me. McCloud responded "Mr. Delgado, read your memos if you have ~~them~~ a copy. MOCC has no interest as an institution in researching your ethic heritage, that is a personal, social issue for you". It's déjà vu all over again; Christians trying to destroy Taino religious beliefs and practices!

43

81. On Feb. 24, 2009 I filed a grievance because I had not received my Feb. 09 issue of Prison Legal News magazine, that brings the count to 3 issues of PLN which have disappeared. The MOCC post office claims my magazines are not arriving but I received a post card from PLN advising me that my issues of PLN are being sent to me. What Black Hole are my PLN magazines being sucked into?

Lt. McCloud advised that MOCC has no reason to hold my mags, that when they arrive, I'll receive it.

The Warden denied my grievance, explaining that "Because of your numerous complaints about your mail, some time ago I asked the MOCC mailroom employees to log every piece of mail that comes into this facility addressed to you. Prison Legal News and Maxim have not arrived during the month of February" This response is dated 3-2-09.

However, this answer is false because I received my Maxim magazine on Feb. 27, 2009, but the Warden claims no Maxims arrived during the month of February.

Additionally, I mysteriously received the Feb. 09 issue of PLN on March 2, 2009. It is important to note that PLN magazines arrive mid or early month of the corresponding month of the magazine, e.g., the Feb issue would have arrived early to mid-February, definitely not in March. Therefore, someone decided to provide me the Feb 09 issue of PLN. My Dec and Jan issues disappeared, I received my Feb PLN, but not anymore after that despite the fact that my subscription expires on September 2010. This is clearly retaliation for exercising my right to file grievances concerning my religious freedom.

44

82. On March 5, 2009 I sent a Request Form to Lt. McCloud asking that I be allowed to use my stereo all day on March 22nd and 23rd to worship on my birthday with dance and music. Birthdays are sacred to the Taino and it holds spiritual values.

I also asked to use the stereo on Sunday, June 7, which is Puerto Rican Day for the same purpose

Prior to submitting this request, I personally asked Lt. McCloud about this issue while he was in my pod and he informed me that he does not see a problem, to submit the request in writing.

However, Lt. McCloud responded "Mr. Delgado, your request is denied" without comment.

82. On March 9, 2009 I submitted an Inmate Grievance against Lt. McCloud alleging he is an ignorant racist and that he provides retarded responses to my grievances about the Red Willow Bark and my religious beliefs which I am prohibited from practicing. In the grievance I also accused the MOCC of providing false and retarded responses to my grievances and being blatantly racist and corrupt,

I made it clear that Warden Ballard's recipe of 10% tobacco mixed with 90% non-tobacco bars me from exercising the Taino tenet of communicating with the spirits and that Tainos do not and cannot use red willow bark for this spiritual communication. However, McCloud asserts in writing that "MOCC has no interest as an institution in researching your ethnic heritage. This is a personal, social issue for you" (quoting Ballard from his 9-29-08 memo)

I objected to this racist behavior in this grievance because red willow bark has nothing to do with my ethnic heritage or Puerto Rican Tainos.

45

I also wrote; This is exactly what is wrong with this ignorant racist administration, that it knows nothing about Puerto Ricans or Taino religious practices and as a result I become a victim of forced religious indoctrination because I simply do not practice the Native American religion, I practice the Native American Taino religion and there is a big difference.

83. On March 13, 2009 I was served a Rule Violation Report from the Hearing Officer which was filed by now Captain McCloud charging me with insubordination/insolence in response to my grievance described above in paragraph 82. The report states as follows:

On Tuesday 10 March 2009 at approx. 1130 hrs while working my assigned post at MOCC in Quilliams 2 I, Captain James McCloud was answering inmate grievances when I noticed that inmate Miguel Delgado DOC # 34388 From Quilliams 2 cell 612 had stated in his grievance that I, Capt. McCloud was a "ignorant racist" and that my answer to his grievance was retarded. A copy of the grievance is attached to my report. Inmate Delgado is in violation of Policy Directive 325.00 Rule # 2.32 Insubordination/insolence.

84. On March 17, 2009 I was found guilty, but because I was already on punitive status in segregation serving 60 days, which is the maximum of number of days an inmate can serve consecutively, I was sentenced to 30 days suspended to probation for 6 months (until 9-17-09). This means I will get the 30 days if I get another write up.

The hearing officer denied my motion to dismiss on the ground that I have the right to file a grievance because he decided I do have this right but it is not grounds for dismissal. I further argued that I cannot be punished

46

for filing a grievance simply because I am critical of a prison employee.

85. I appealed this conviction to the Warden on March 23, 2009, but as always, my appeal was denied in an April 30, 2009 memo. I then appealed this answer to the Commissioner on May 6, 2009, but as always, my appeal was denied without comment in a response dated May 8, 2009.

86. Capt. McCloud's Feb-18, 2009 response to my grievance referenced in paragraph 82 above was "Mr. Delgado, if your (sic) not happy with my answer then move on to the next step. Appeal it to the Warden".

   On March 10, 2009, the Warden outright lied in his response by claiming "This issue has already been addressed".

   It is worthy to note that Capt. McCloud never denied my allegation that he is an ignorant racist and that he provides retarded responses to my grievances. Nor was I advised that I should not address this via a grievance.

87. I submitted a grievance on March 10, 2009 because I need hair grease for my wooly, dry and brittle hair. Inmates are not allowed to purchase any lotion, vaseline, or any type of hair grease in the segregation unit (except for those on 30 status).

   There is a list of items which inmates in segregation are allowed to have in Operational Procedure # 3.30, but this list is not strictly enforced and inmates are allowed to possess various items not on this list, which is made up by the Warden.

   I filed the grievance because I had been growing my hair long according to my religious beliefs. My hair is wooly, dry and brittle and if I do not apply some form of hair grease it is almost impossible to maintain in a

47

healthy and appropriate manner.

In the grievance, I argued that this all-white prison administration is wholly unsympathetic to the grooming needs of inmates of color held in segregation and the Warden should add hair grease to the list of allowable items listed in 3.30.

Capt. McCloud responded that 3.30 does not authorize this item, which is my entire point. My grievance was denied by the warden and the Commissioner without comment. As a result, I had to cut all my hair because I could not maintain it under the conditions forced upon me by this racist prison administration — It is hard to understand why inmates in the safest maximum security prison in North America which houses the best-behaved, least violent prisoners known to any maximum security prison are not allowed harmless hygiene items such as lotion and hair grease.

This caused me to suffer irreparable harm by causing me to dishonor ~~86.~~ Yaya by not growing out my hair to gain knowledge, wisdom and spiritual strength.

88. On February 18, 2009 I filed a grievance because this administration had ordered my tobacco (which I had previously been allowed to purchase and use) destroyed unless I purchased a bag of Red Willow Bark chips for the chaplain to mix with the tobacco to make a Mount Olive concoction prescribed by the Warden as a so-called "Traditional Native American pipe mixture". The grievance reads as follows:
"
I file this grievance in response to C.J. Rider's Feb. 2009 memo which warns that I must order red willow bark by March 13, 2009 or my tobacco will be disposed of. I object to this unconstitutional policy of proselytizing for the religious practice of others and against the knowledge and beliefs of my Taino practice,

48

of utilizing common tobacco (nicotiana tabacum) as my primary vehicle for communicating with my Gods. Without natural tobacco, I cannot extend my prayers. Since I have been denied access to my natural tobacco (in fact, my tobacco leaf was discarded) I have been unable to worship in any meaningful manner due also to the Warden's and Rider's forced religious indoctrination of which I know nothing of and have never heard of; Willow bark is a foreign substance and is offensive to my religious beliefs and this administration cannot lawfully force me to adopt the religious practices or beliefs of groups that I do not know anything about. I am a Taino Indian from Puerto Rico. I have nothing to with the Native American Indian of North America. Giving me the choice of smoking willow bark or nothing at all is identical to giving a Jew or Muslim the choice of eating pork or nothing at all.

" Just because I may be the only Taino Indian here does not allow you to just put me under some umbrella of your desired beliefs which you want me to adhere to. You want me to suffer not only cultural alienation and personal disorganization but you want me to abandon my Taino customs and rituals? You say you must control the introduction of tobacco, but don't you have to control the introduction of red willow bark into the inmate population as well? My knowledge of the Taino religion mandates I use natural tobacco and this can only be mixed with hallucinogens (which I can provide written documentation and which Ballard has already verified thru a Taino religious leader he contacted).

" There is no need to customize any individual service because there is no group service, just a bunch individuals of different tribes in one room and all tobacco-type products are kept in Ziploc bags with the owner's name on it. Nothing is done as a group: You get your tobacco and move on, same happens in Quilliams, you get your tobacco, you do your prayers, you move back to your cell.

There is no customization required; like a bunch of pedestrians at a bus stop, you all get on heading in the same direction but get off at your stop without any need to customize a special detour or route, the trip is planned ahead.

"Even if you falsely claim that no substantial burden exists because tobacco is part of the mixture, you need to explain why I must use willow bark additive which is offensive to my religion. You can fool those inmates who don't know anything about their claimed religion or their rights, but I know better...

"I ask to be allowed, as is my right, to exercise my Taino religious beliefs and worship with natural tobacco without foreign substances such as red willow bark."

Capt. McCloud denied my grievance, advising that the chaplain has to follow the Operational Procedure 5.08 (Religious Services). The Warden responded with " We will adhere to Operational Procedure 5.08"

I don't understand how the Warden can create a religious policy which is constitutionally invalid then rely on it to bar the exercise of my Taino practice.

On Feb. 20, 2009, Warden Ballard denied my grievance, citing his own Operational Procedure # 5.08

On Mar. 2, 2009, I appealed the Warden's decision to the Commissioner's Office, which was responded to by Charlene Sotak on Mar. 6, 2009 with a remand to the Warden for further action.

89. On 3-6-09 I received a separate letter from Ms. Sotak indicating that the grievance (cited in paragraph 88), 09-MOCC-Q2-82 was remanded because I had apparently provided "scant information pertaining to the use of tobacco being necessary to practice [my] religion".

Ms. Sotak conveniently ignored the fact that there is a one page

attachment limit imposed on the grievant by policy of the Commissioner, that Ms. Sotak had previously threatened me with disciplinary action, if I continued to attach extra pages to a grievance form, as well as the fact that I had previously sent her and the Warden a plethora of information regarding the need of natural tobacco use for Taino worship.

Ms. Sotak also asks the Warden to ascertain whether tobacco is necessary for the practice of Taino religion and if so, what less restrictive alternatives are available including that of red willow bark or other substitute items and to produce such information to support the same.

dated 3-18-09

90. I then received a memo from Warden Ballard again informing me that the grievance was remanded with an attached Inmate Religious Accomodation Request Form and instructions to fill out the form and forward it to the Chaplain for processing. The Warden and Ms. Sotak ignored the fact that I had done this twice already and had even provided an affidavit from myself detailing Taino religious practices and the need for natural tobacco for spiritual use. The Warden and Ms. Sotak have been made fully aware thru previous grievances and other communications in the recent past that tobacco is sacred to the Taino, it is used for spiritual purification, enlightenment and for communication with the supernatural, providing a celestial bridge with the Great Spirit, Yaya. The tobacco is the primary vehicle for communication with the Cemis, ancestors and spirits.

The Warden and Ms. Sotak have also been made clearly aware that the tobacco must not be mixed with foreign substances such as red willow bark and cannot be touched by foreign hands after it is blessed.

51

91. On 3-20-09 I forwarded the Religious Accomodation Request Form to the Chaplain and on 4-3-09 I received an amended response denying my grievance. The Warden explained that there is no substantial burden on the exercise of my religious belief because I am permitted additional means to practice my belief as well using the "approved pipe mixture".

The Warden further advised that "other jurisdictions" were consulted and "one of those jurisdictions uses the 75% red willow bark / 25% tobacco pipe mixture. That jurisdiction has about 24% ethnically / racially Native American inmate population"

The Warden has made this claim regarding this anonymous jurisdiction. I have requested the warden identify this jurisdiction in the past, but he has refused to do so because it would expose his claim as false and incorrect.

92. I then received a response from Charlene Sotak dated 4-2-09 denying my grievance by claiming "there appears to be no reason to deviate from the Warden's response".

It is worthy to note that the response from Ms. Sotak is dated 4-2-09 and the Warden's response is dated 4-3-09. How is it that the final response preceded the Warden's ?

93. On Feb. 18, 2009 I submitted Grievance # 09-MOCC-Q2-81 regarding the mere one hour stereo with 3 CD limit not being enough time for spiritual worship inside the privacy of my own cell. This grievance was denied by the Warden then remanded by Ms. Sotak on 3-6-09.

94. 09-MOCC-Q2-81 reads as follows:

"As this facility is very well aware, the one hour I am permitted to possess my stereo and 3 CDs for so-called religious reasons is nothing more than an insult to my Taino spirituality and religious practices. One hour is not nearly enough for a Guakete gathering or Araguaco dance which normally last many hours and can even go as long as several days, depending on purpose of the dance.

Ballard claims in his response to previous requests and other pleas urging him to grant me more time with my stereo and additional music discs for a meaningful worship experience that stereos are not allowed in Quilliams though many other inmates have them, that one hour is comparable to what other inmates get, which is an outright lie; Christians get unlimited time to worship. Ballard also states I should work to get out of segregation to ease the restrictions placed upon me while at the same time outright lying by claiming that no burden exists on the exercise of my religion".

"The one hour in question has zero spiritual value to satisfy my knowledge and beliefs. The one serves to satisfy nothing more than a secular pleasure of listening to the radio for a brief period.

"When this matter reaches federal court, I don't want you all to pat yourselves on the back or high-five each other because you think one hour of stereo time with a few relevant songs constitutes religious meaningful Taino worship when it doesn't even come close. Your one hour is blatant tokenism, of which I'm very certain Mr. Ballard is very proud of...

( Please read further in referenced grievance )

95. In response to the grievance referenced in paragraphs 93 and 94 above, I received a memo date 3-6-09 from Ms. Sotak informing me that the grievance was remanded to the Warden to ascertain why a stereo is necessary for Taino worship and if so, why the disallowance of additional time is in furtherance of the compelling interests.

   The matter of my vinyl CD case was not addressed nor was the fact that the issue is of in-cell worship.

96. I then received a memo from Ballard dated 3-18-09 with an Inmate Religious Accomodation form and instructions to fill out the form and send it to the chaplain for processing.

   Note that I have done this already.

97. I forwarded the Religious Accomodation form to the Chaplain on 3-20-09 citing the multiple documents I have forwarded to the Warden previously fully addressing the issue.

98. I then received a memo dated 4-3-09 from Ballard regarding his Amended decision informing me that I could only have the stereo and 3 cds for one hour a week and it is comparable to the time afforded other inmates in the segregation unit for in-cell worship. Ballard states that to permit more in-cell opportunity for religious purposes than other inmates in the unit could result in a substantial threat to the order and security MOCC strives to maintain.

   Ballard conveniently ignores the fact that MOCC is safer than the local churches and libraries and there is virtually no violence in MOCC!

54

Ballard further states that no substantial burden exists in the exercise of my declared religion because I have other means to worship in my cell, such as reading religious texts anytime (which I don't have), singing praise and dancing at any time I wish (which is impossible without the music). Ballard also maintains that I can smoke his tobacco/red willow bark concoction despite his knowledge that I am forbidden from using it.

99. I sent to Warden Ballard a Religious Request dated March 11, 2009 in which I stated the following:

"Sir, as you certainly know, I am a Taino Indian. As a result of your religious policy, you have left me spiritually dead. However, we can argue that at a later date. What I want you to be aware of is that March 23rd is my 41st birthday. Birthdays, for the Taino, holds spiritual significance, to put it simply, it is a time when the portal to the ancestors is open and it is an opportunity for a family spiritual reunion, among other things. I need my stereo all day on 3-22 for pre-birthday religious celebration and all day on 3-23 for celebrating my arrival on Bibi Atabey (Mother Earth) and being kissed by Baba Guey (Father Sun).

Additionally, the first Sunday of June each year is Puerto Rican Day. This year it falls on 6-7-09. For sacred, spiritual reasons, I request to be allowed my stereo all day on 6-7. I need to dance for my ancestors and beg their forgiveness because they are very angry with me for neglecting to offer them natural tobacco.

Thank you"

This request was returned unanswered, but was stamped "Received Mar. 13, 2009, Warden's Office".

55

100. I mailed a letter dated April 3, 2009 to Ms. Sotak in reference to grievances # 09-MOCC-Q2-81 and 82 which were remanded to the Warden due to Ms. Sotak's claim that I provided insufficient and scant information regarding the need for a stereo and tobacco for the practice of my Taino faith.

In the 4-3-09 letter I state the following:

"Ms. Sotak, I was not exactly sure what specific information you require regarding the two grievances at issue, having already provided multitudes of relevant information to the MOCC chaplain, Warden, Religious Services Committee, and even you in the past via religious requests, grievances, and general correspondence detailing my Taino religion, the practice and rituals, MOCC's refusal to allow me to exercise any religious tenet and the spiritual death I am continuously suffering. I don't know what else I can do or say. I have offered to meet with the Warden, chaplain, or to go before the Religious Services Committee to explain my religion and religious requirements and to answer any questions. No. No. No. and No! These have been the response from all persons in my quest for religious freedom. I am at a loss

"I have provided very detailed and specific information related to Taino use of common tobacco and use of music for spiritual reasons. If you have any specific question related to this matter, please feel free to ask and I will quickly respond. Thank you."

101. After receiving Warden Ballard's Amended Response to Grievances # 81 and 82 I immediately forwarded a letter dated 4-8-09

101. to Ms. Sotak urging her to allow me to submit my final comments on the issues raised in my grievances because the responses of the Warden were incorrect, false, exaggerated and misleading.

102. I received a letter dated 4-14-09 from Ms. Sotak in response to my letters referenced above in paragraphs 100 and 101 requesting that I submit any information I may want to send to help her understand what I am talking about in reference to my Taino religion. I was to submit the information by 4-25-09.

103. I forwarded my final comments to Ms. Sotak as requested in a letter dated 4-20-09 in which I explained in detail the significance and importance of music and natural tobacco use during Taino rituals. This letter contains 7 pages.

104. I then mailed a letter dated 6-15-09 to Ms. Sotak to confirm she had neglected to respond to Grievance 09-MOCC-Q2-69 regarding my disappearing Prison Legal News magazines; Grievance 09-MOCC-Q2-81 regarding my need to have my CD case and stereo from sunset to sunrise; Grievance 09-MOCC-Q2-124 regarding Capt. McCloud's ignorant and racist responses to my request forms and grievances and; my letter dated 4-20-09 regarding my final comments on my Taino beliefs.

    I had previously contacted her concerning this issue with no response, I've contacted the MOCC legal dept. thru my Unit Team also with no response. Obviously there is no intention to respond.

57

105. I surprisingly received a letter dated July 20, 2009 from warden Ballard in reference to "Correspondence with Charlene Sotak, dated June 15, 2009"

Apparently, my letter cited above in paragraph 104 was intercepted by the Warden and was not received by her. This response by the warden did not actually address any of grievances which Ms. Sotak had thus far neglected to answer with a final response. Instead, the Warden recited nearly verbatim his previous grievance responses and excuses for why I cannot exercise my religious beliefs yet it is only a "least restrictive means".

He again claims that "other jurisdictions" were consulted and "one of those jurisdictions uses the 75% red willow bark / 25% tobacco pipe mixture". I have asked numerous times for the identification of this mysterious "jurisdiction", even filed a grievance, but Ballard refuses to provide the name of this one jurisdiction.

Ballard also states: "Even if Taino culture traditionally used a tobacco only mixture, the least restrictive means available to MOCC to advance the compelling governmental interest of a tobacco free institution is to maintain the 75% Red Willow bark / 25% tobacco mixture"

. Ballard is quite aware that I must use natural tobacco only for religious worship which he acknowledged verifying from a Taino religious source and he knows I cannot use his prescribed concoction of red willow bark yet continues to inform me the option is available to me, after destroying my sacred tobacco.

Ballard further states in his July 20, 2009 letter that the dramatic drop in numbers (from 220 to 20) of inmates declaring themselves

58

to practice the Native American religion demonstrates the insincerity of most who declared themselves Native Americans after MOCC went tobacco-free. This may be true, but that punishes me for the potential insincerity of others, especially after I've spent so much time proving the fact that Tainos do not practice the North American Native American Religion, that I need natural tobacco and that I am sincere in my beliefs.

106. Ballard sees the reduction in numbers of inmates who now practice the Native American religion as a sign of insincerity, but I see it differently; I believe the reason Ballard refuses to name this mysterious jurisdiction is because his prescription of 75% red willow bark and 25% Kinnikinnik, which is mixed by the chaplain, is definitely <u>not</u> a traditional tobacco mixture or method of mixing for the Natives of North American tribes.

Red Willow bark is the dried bark that Lakotas mix with wild tobacco to smoke ceremonially. Red bark is referred to in English as KinniKinnik.

KinniKinnik, often called 'chanshasha' (red, red wood) is an ingredient of the tobacco of the Sioux, it is the dried inner bark of the red alder or the red dogwood (cornus stolonifera). This is rarely smoked alone because of its bitterness; there is usually added to it an <u>equal</u> part of the Ree twist tobacco and also a small portion of some fragrant root or herb, often the Sweet Ann root. These ingredients are <u>always</u> mixed in a ritual manner.

It is important to note that MOCC <u>forbids</u> twisted tobacco or tobacco in leaf form. The only "tobacco" MOCC allows is the KinniKinnik,

which is sold as a mixture of leaves, roots, bark and tobacco. This mixture contains little tobacco. MOCC demands that all inmates purchase a $15.65 4oz bag to be mixed with the Kinnikinnik mixture!

Ballard claims it is a 75% - 25% mixture, but this cannot be true when the 1.75 oz of Kinnikinnik is not 25% tobacco but a mixture which cannot possibly contain more than 30% of tobacco, which only means that Ballard's 25% is actually closer to 08%. To add insult to this injury, Ballard insists that the Native Americans that utilize this blend to forego the ceremonial mixing of these ingredients because the christian chaplain is the one who mixes the ingredients then dispenses a spoonful to each participant. This is outrageous and an obvious denial of the participants' religious rights.

107. Ballard further states in his July 20, 2009 letter referenced above that the one hour I am granted to use my stereo and 3 CDs is a reasonable accomodation. He states that 1-1½ hours per week is the maximum that all faith groups are allowed to worship in the chapel. First, this is entirely false. Second, it is ridiculous for the warden to compare my time to the time inmates may use the chapel, when I don't want or need to use the chapel, I use my stereo inside my cell. Therefore, not only am I forbidden from communicating with the spirits with tobacco, I am the only prisoner in MOCC that is limited to a one hour in-cell worship! He advises I will "not be granted special accomodations".

108. Ballard also states that the one hour accomodation is a "just in case"

concession for the practice of my religion. He asserts that the three CDs I selected are Salsa music and are not religious in nature. He claims that is cultural and not religious, but he has allowed it as a gesture of good faith. These claims are obscene. Ignorance and discrimination can never be a gesture of good faith.

When the Europeans conquered the Tainos and later introduced Africans the result was a synthesis combining cultures, customs and language which produced a new reality: the Puerto Rican, Cuban and the Dominican. Survival of Taino religion does not require that all things today be the same as they were in the Caribbean in 1492. Am I any less Taino because I watch television or wear pants? Am I any less Taino because I speak, read and write Spanish and English instead of the virtually extinct language of the native Taino? No, and no.

There is no requirement that for music to be spiritual to the Taino that it be a specific ~~to a specific~~ genre or language, but what is important is that it bear a significant connection to the worshipper such as with the rhythm and lyrics. It is absurd for Ballard to declare that Salsa music cannot be religious in ~~its~~ nature when this genre of music combines Spanish, African and Taino cultures. Granted, not all songs are relevant for purpose of worship but a few are and the rest of my CDs which Ballard refuses to allow me to have also have relevant songs but I am forced to rely on the generosity and judgment of Ballard who apparently has taken the position of knowing more about Taino culture and religion than me.

- 61 -

109. In the final portion of Ballard's July 20, 2009 letter referenced above, he claims that information about the Taino religion is scarce on the internet, but in another letter from Ballard dated Sept. 29, 2008, he states, "we found information from a Taino religious source that discouraged the regular use of tobacco and only recommended a monthly use, no inhaling, and only taking the minimal number of puffs."

The claim that a "Taino religious source" would say this about how to use tobacco is entirely false because this 'practice' described by the warden is contrary to Taino beliefs and practices. However, I point out Ballard's 9-29-08 letter to demonstrate the conflicting statements he has made; first, he is able to locate a supposed 'Taino religious source' to suit his unconstitutional policies barring Taino religious practices, now later approximately ten months he claims that Taino information just isn't available.

Ironically, Ballard's 9-29-08 letter was in response to a letter I sent to the chaplain in which I request assistance in contacting a Taino religious source for spiritual guidance. His claim at the time was that "MOCC has no interest as an institution in researching your ethnic heritage. That is a personal, social issue for you and it has no bearing on your religious requests. We will not pursue this for you".

110. Ballard closes his 7-20-09 letter by providing seven addresses to Taino groups which he suggests I contact. Ironically enough, I had already written to most of these addresses with no response and I did file grievances on this issue because it seems impossible that no matter how many letters I send to Taino groups, I never receive a response. MOCC has barred any communications from Taino sources -

111. I filed a grievance dated Aug. 10, 2009 because despite numerous letters to Charlene Sotak, I had yet to receive a final response from her to grievance # 09-MOCC-Q2-81 (Stereo and CD case).

After intercepting my correspondence to Ms. Sotak, the Warden had the audacity to reject this grievance, advising me that it is an issue I must address to the Commissioner's Office.

Ms. Sotak also denied this grievance but did attach a memo by which she finally responded (five month late) to 09-MOCC-Q2-81. Obviously, she denied # 81. All grievances are denied, no matter what.

112. On Aug. 21, 2009 a book arrived here for me and was seized, without notification or process. The reason the book was seized, I later learned, was because it was in Spanish.

I learned of this suspicious, threatening book on Sept. 23, 2009 when a counselor, Mr. Sawyers, gave me a Evidence/Property Seizure Receipt to sign for a book I had never seen before and the ever-hostile Sawyers would not give me any explanation about the seizure or book, nor did he give me a copy of the receipt.

I filed a grievance on this issue because "Spanish" is not a justification for seizing a publication pursuant to WVDOC PP. 503.03. On Oct-05, 2009, I finally received a copy of the seizure form and the seizing party, Amber Creathers, State Shop Supv., forged my signature on the Chain of Possession portion. Creathers describe the item seized as "1 Book in Spanish (Memoria Indigena)". This book, "Indigenous Memory" is about the survival of the Mayan culture. They could've simply asked me what is the book about. Ignorance is frightening.

- 63 -

113. I filed a grievance dated Sept. 28, 2009 because this facility has a lot of books about other religions/cultures in the library and also plays videos about these religions/cultures on its in-house channel but the same cannot be said about Tainos, the first people to encounter Christopher Columbus in 1492.

The response, from Lt. Hill, citing Chaplain Rider, is that "the MOCC chapel doesn't purchase any religious books, videos, or other items. The chapel is entirely dependant on donations from outside organizations for those items. The Chaplain suggested that you write the organizations you listed and ask them for a donation to MOCC. The material will be reviewed for security concerns and then made available what can be".

The claim that MOCC is entirely dependant on donations is 100% false! According to WVDOC PP # 510.00 (Religious Services) Section V. A. 7. b. 2, the facility Religious Services Committee shall be responsible for "Reviewing and approving requests for purchases of faith group items necessary for the practice of a particular faith". and Section V. M-3. : " Upon request and to the extent possible, the chaplain/coordinator shall assist the inmate in obtaining religious literature".

I provided the ~~sites~~ website addresses to two Taino sites that have available books and videos. I cannot "write" to these as the racist chaplain suggested since I do not have access to the internet and the chaplain will not contact any Taino group or organization for any reason. I have written to numerous other Taino groups but I have been denied any mail from them.

114. I submitted a grievance dated Oct 1, 2009 in which I cited numerous instances of discrimination and requested MOCC to for once show support of its Latino population, at least during the month of October, which is Hispanic Heritage Month.

  The grievance was denied.

115. I sent a short letter dated Oct. 5, 2009 to Warden Ballard in which I pointed out to him a couple of obvious identifying markers of my American Indian - Taino heritage :

  1 - My full name is Miguel Angel Delgado Luna. In English that translates to Michael Angelo Slender Moon (or Thin Moon, as opposed to Full Moon)

  2 - I have a tattoo on my left breast, "BORIQUA", which MOCC photographed when I first arrived here over 5 years ago. The Taino name for Puerto Rico is BoriKén (commonly known today as Borinquen) Borinquen means Land of the Valiant ~~lord~~ and Noble Lord, which refers to the Great Spirit or Creator. Hence, a Boriqua is a Taino from Borinquen.

116. This Court needs to be informed that MOCC is the safest maximum security prison in North America and it houses the best behaved maximum security prisoners. In the 14 years MOCC has been operating there has only been one inmate on inmate murder. Considering most maximum security prisons have 1 inmate on inmate murder every other month, our record is unbelievable. Other types of violence here is practically unheard of. In fact, other prisons have to put aside special housing for its sexual

deviants such as child predators, MOCC is so safe that pedophiles and the like live in general population and are treated as if they are celebrities.

There is ZERO gang violence in MOCC because there are no gangs here. MOCC administrators have claimed there is a gang problem here but that is to secure financial assistance from the government. The only dangerous gang here consists of prison guards.

MOCC exaggerates its disciplinary charges against prisoners to bolster its disciplinary records. For instance, an inmate caught masturbating alone inside his cell is charged and convicted of RAPE. Although the commissary here sells OTC medications such as ibuprofen, an inmate caught with a loose tablet of ibuprofen is charged and convicted of USE AND POSSESSION OF DRUGS/INTOXICANTS/PARAPHERNALIA.

If the statistics of inmate misbehavior in MOCC were to be analyzed by the uninformed, he/she would think MOCC is filled with a bunch of drug addicts raping each other when in truth it's just a few sex deprived masturbators with minor aches and pains.

Despite the undisputable fact that employees are safer in MOCC than in the free world, employees have informed the media and the public that it is very dangerous in MOCC. In early 2006 when WVDOC employees were fighting for increased wages, one MOCC employee, Corporal Hilewitz, is quoted in the newspaper as stating he hugs his daughter before going to work because he doesn't know if it will be the last time he sees her. Seriously, the most dangerous part of his work day is the commute to and from work.

A shift commander at MOCC, Lt. Larry Petty, told the media that "working in MOCC" is every bit as stressful as a law enforcement job". Really?!

— 66 —

How many MOCC guards have been murdered or seriously assaulted while on duty? Could the answer be zero?

✓ About 3 years ago we were all locked down, our hooded sweatshirts were seized, the hoods were cut off and the rest returned.
The prisoners did not retaliate.

✓ Our commissary was a cooperative with all profits deposited into the MOCC Inmate Benefit Fund pursuant to State Code. The commissary was contracted to Keefe Commissary Network a few years back and now 92% of the profit is kept by Keefe, the cost of the low budget item tripled and the quality of the items went far south.
The prisoners did not riot.

✓ Since Keefe keeps 92% of the commissary profits, the Inmate Benefit fund has been depleted and there is not enough money to pay for our Premium cable channel, Cinemax and it was cut off.
The prisoners did not riot.

✓ There are numerous known snitches, infant killers and rapers of children in the general population. Yet they are not assaulted or murdered, and I am shocked!

✓ We are served tiny portions of disgusting food, but no one riots!

✓ The water is often rusty and always has a strong metallic taste. Even though the staff are aware of this and don't drink it, the prisoners are happy to and don't riot.

✓ We lost our tobacco privileges while guards and other staff did not and some even flaunt it by walking around with big wads of chewing tobacco in their cheek. No one assaults them and there were no riots or signs of major violence.

Despite this administration's efforts and dedication toward pushing us into acts of violence, we maintain peace. In fact, the great majority of inmates in punitive and administrative segregation, including myself, are there for mainly frivolous, exaggerated and non-violent offenses. To prove my point, instead of rewarding this extraordinary behavior, we get more and more privileges taken from us, including severely limiting the amount of personal property we can possess or purchase. When once we were allowed to receive/order personal items from outside sources, we are now obligated to buy these items from Keefe, regardless if it is not the brand of item we desire and despite the low budget item costing triple its value. Still, no one riots.

If MOCC were the type of prison everyone imagines prisons to be, such as the prisons seen in documentaries about ordinary prison life, this mountain would be awash in blood. However, this is not the case.

117. I say all this to alert this Court that the defendants are going to invoke all sorts of imaginary threats to the safety and security of MOCC if I were allowed access to tobacco or my stereo and all my CDs to practice the main tenets of my spiritual beliefs or were otherwise allowed to practice my religion in the safest prison in North America.

The defendants and their counsel are going to weave elaborate webs of unverifiable deceptive claims in an attempt to convince this Court that the skies will become heavy and fall, the Earth will weaken and crumble and the seas will become toxic with my beliefs and it will swallow MOCC and West Virginia if this one Puerto Rican is allowed to practice his Taino rituals. Don't believe a word they say about the imaginary and exaggerated security threats.

– 68 –

V. PRAYER FOR RELIEF

118. The defendants have singly and collectively acted in a cruel, sadistic, malicious, racially-driven manner to intentionally cause the daily and on-going spiritual death of this plaintiff by their actions, explained further and fully above in paragraphs 1 thru 117 cited by reference herein.

WHEREFORE, plaintiff requests that the Court grant the following relief:

A. Issue a declaratory judgment stating that:

1. The defendants have acted in violation of the United States Constitution, the Religious Land Use and Institutionalized Persons Act and the American Indian Religious Freedom Joint Resolution Public Law 95-341.

B. Issue an injunction ordering defendants or their agents to:

1. Void their discriminatory anti-American Indian-Taino Policy Directives and Operational Procedures which bar me completely from practicing any Taino spiritual ritual and adopt the Inmate Religious Beliefs and Practices of the U.S. Department of Justice Federal Bureau of Prisons, Program Statement Number P5360.09 and Technical Reference Number T5360.01.

2. Allow plaintiff to practice his harmless spiritual rituals which include use of natural tobacco or cigars and music as required by my knowledge and beliefs of Taino Spirituality.

3. Cease discriminating, harassing, and retaliating against plaintiff by withholding his mail/magazines or filing false and exaggerated Rule Violation Reports or keeping him on Administrative Segregation. Also, defendants will retaliate against plaintiff for filing this action, perhaps even intercept mail to/from the court.

4. Replace plaintiff's tobacco which defendants destroyed and to provide plaintiff with a lifetime supply of natural tobacco or cigars for plaintiff to fulfil the sacred and primary tenet of communicating with the spirits, a communication which the defendants have destroyed.

5. Provide equal time and equal opportunity to this plaintiff to practice his Boriken-Taino spirituality just as they have the time, space, staffing and money to roll out the red carpet for the various Christian sects in MOCC for their worship.

a. If MOCC can provide christians with a 3 day Kairos festival from morning to night with an incredible buffet for breakfast, lunch and dinner consisting of sandwiches, chicken wings and an assortment of pastries and desserts, etc., I want the same

b. If christians can be provided many hours worth religious movies and recorded sermons play on the in-house TV channel, I

-70-

want the same.

c. If the defendants can locate countless clergy or volunteers for the Christians, so too must they locate a Taino spiritual advisor.

d. If the defendants can provide volumes upon volumes of religious books for the prison library for Hare Krishna, Muslim and christian prison population, so too must they provide volumes of books of Taino culture and spirituality.

C. Award compensatory and punitive damages in the amount of $250,000 jointly and severally against the defendants for their past and on-going violation of plaintiff's civil and constitutional rights and to prevent such despicable behavior from occurring in the future which resulted in a spiritual death and a loss of faith.

Plaintiff does pray for judgment in his favor against all defendants together with filing fees, attorney fees and any additional fees incurred in the prosecution of this action, with such additional relief as the Court may deem just and proper.

I declare under penalty of perjury that the foregoing is true and correct.

October 29, 2009

Respectfully Submitted,

Miguel Angel Delgado

MIGUEL ANGEL DELGADO 34388
MT OLIVE CORRECTIONAL COMPLEX
1 MOUNTAINSIDE WAY
MT. OLIVE, WV 25185

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA


MIGUEL ANGEL DELGADO,

        Plaintiff,


V.                              Civil Action No.


DAVID BALLARD, et al,

        Defendants


AFFIDAVIT ON PLAINTIFF'S RELIGIOUS BELIEFS AND

HISTORY OF THE AMERICAN INDIAN TAINO PEOPLE


STATE OF WEST VIRGINIA

COUNTY OF FAYETTE, to - wit:


    Comes Now, Miguel Angel Delgado, pro se, a WV state prisoner and plaintiff in the above cited action, who swears and deposes the following:


1. My full name is Miguel Angel Delgado Luna. I am WV State prisoner 34388 and am serving a sentence of life without parole in Mount Olive Correctional Complex, Fayette County, West Virginia.


2. I have been in the custody of WVDOC Commissioner James Rubenstein since September 30, 2004.

               - 1 -           (1 of 18 pages)

3. Plaintiff is a Puerto Rican National of Taino-Arawak Native American descent but does not currently belong to any Taino Tribe.

4. The Taino Indians were the first Native American to encounter Christopher Columbus in the Caribbean on October 12, 1492, when Columbus landed on the island of Guanahani (today; San Salvador in the Bahamas)

5. "Taino" is a name first used by the Spanish invaders. It derives from the answer tribesman gave the Spanish when they were asked "Who are you?". The Natives simply replied 'Taino', meaning "Good and Noble People" in order to distinguish themselves from some of the more warlike southeastern tribes, such as the feared Caribs or Waib.

6. When Columbus landed in Guanahani, he reportedly rescued 6 Boriken Taino women and one thirteen year old boy named "Gueycan" (Center of the Sun) from the hands of the Caribs. Upon returning to Spain, Columbus took these seven Tainos and paraded them before the Royal Court of Ferdinand and Isabella in Madrid, Spain.

   Upon Columbus' return to the Caribbean in 1493, he brought the six Taino women and young boy with him. On seeing the outlines of Boriken (today, Puerto Rico) on November 18th, 1493, the overjoyed Tainos shouted "Boriken", and jumped overboard and swam for shore, to the amazement of the Spaniards. On November 19th, 1493 Columbus landed in what is known today as Puerto Rico, marking the beginning of the end for the peaceful Tainos.

7. The Taino written language was in the form of petroglyphs, or symbols that were carved in stone. They spoke Arawakan. Taino society was communal. Polygamy was common. The Tainos were farmers and fisherman.

- 2 -

8. Christopher Columbus wrote in his journal that Tainos had beautiful, tall, slender bodies. Their color was dark or olive, and they wore short hair-cuts with a long hank at the back of the head. They were clean shaven and hairless. The islands were densely populated. According to Columbus, the Taino tongue was "gentle, the sweetest in the world, always with a laugh".

Columbus witnessed the Tainos use tobacco as a medicine, as a hallucinogen in religious ceremonies, and as offerings to the spirits they worshipped. Columbus observed the Arawakan people smoking tobacco loosely rolled in a large tobacco leaf. They also smoked tobacco through a tube they called a tobago, from which the word tobacco originated. Columbus' crew introduced tobacco growing and use to Spain, which spread throughout the world.

9. Boriken's (Puerto Rico) head "Cacique" (Chief) at the time of Columbus' arrival was Agüeybaná. The island was divided into "cacicazgos" (Chiefdoms). Puerto Rico had approximately 20 Caciques at the time of Columbus. The island was divided into provinces, districts, and villages, each with a Cacique.

10. The social structure was as follows: "Nitainos" were the noblemen and were the warriors, craftsmen, and artesans. "Naborias" were the laborers and were the lower class. Caciques (Chiefs) were inherited positions and came from the Nitaino class. Bohikes (Medicine Men) were from a lineage of Bohikes. The social structure was matrilineal - the lineage was carried by the mother. It is not clear if Nitainos were born into or earned their social class. The Nitainos ruled over the naborias. The naborias were like serfs, they fished, hunted, and worked the gardens, and generally did the hard labor.

-3-

11. The Cacique was an inherited position of great privilege, which transcended individual "yucayeques" (tribal villages). The cacique was polygamous. Some of his wives were from political marriages, which would unite yucayeques and form alliances. The caciques also wore a distinctive head covering made from a cotton band with a gold amulet or seal of the tribal chieftains. It was fashioned with blue and red macaw feathers and other parrot feathers of many colors. Caciques wore a "Mao", which was round white cotton cover with a center whole used to cover the shoulders, chest and back. The Mao was a status symbol and was also used to keep the sun off the shoulders. Caciques ~~participated~~ participated in the cohoba ceremonies. They also owned most of the powerful religious symbols, which were carved from wood or stone. A Cacique was carried on a litter by naborias. Often, a cacique's favorite wife or wives were buried alive with him. They were first given a potion to drink that would allow them to sleep through it.

12. The yucayeques were built close to a source of water with a courtyard in the middle and under tall trees. Yucayeques had four roads that led out from the "batey" (plaza). A tall fence surrounded the village. A road was built leading directly to the water source, with two tall lookout towers at either side. Around the yucayeques were the "conucos" or farms. Sometimes ball game plazas were built outside the walls.

   The villages never went to sleep completely. There were lookout posts to be manned, nocturnal fishing and other nightly rituals to be conducted. The first order of the day was ritual <u>bathing</u> <u>and</u> <u>prayers</u>. After a morning meal, labor was assigned by the leaders according to gender and group.

13. Bohios (huts) were ~~round with conical shaped roofs~~ rectangular huts of thatch and wood without windows. The

-4-

"caneys" (Sacred Longhouse), always located in a prominent location, were large round ~~rectangular~~ structures with windows, built for the Caciques and bohiques only. They were ~~long~~ large and sometimes housed 15 families. Each bohío and caney had storage space made from a flat surface that hung from the roof of the dwelling. The storage ~~fill~~ space was filled with woven baskets that contained useful items.

The floor was made of packed dirt and was kept immaculately clean. A fire pit with a griddle ("barbacoa") and an olla (large covered clay pot used for cooking) were found along with "dujos" (long-backed chairs) and "hamacas" (hammocks) for seating. Tamed parrots and small (now extinct) domesticated dogs were kept.

14. Tainos cultivated bitter manioc root or "Yuca" in "conucos" (raised gardens). Conucos were tall mounds of loose dirt built for farming. They were 10-15 feet wide and about 6 feet tall. The Yucca was planted in the conuco, since it needs aerated soil.

Yuca was the Taino staple food, and from it flour and "casave" bread were made. The Tainos used tubers as a source of food. Also harvested were "guanábana" (custard apple), yautía, squash, mamey, papaya, mango, pineapple, achiote, sweet potatoes, yams and corn. Peanuts, lerenes, guava, soursop, sea grapes, small hot + sweet peppers, and lima beans, bananas, and plantains, grew wild.

Tainos believed that corn grew with the moon so they planted it on hillsides during the new moon. Some corn was picked while young and tender and it was eaten raw. Fully ripened corn was toasted. Corn bread was made by soaking the kernels in water and mashing them to form them into loaves. Loaves were wrapped in leaves and cooked with a little water, and had to be eaten within a few

days or it would spoil. Corn husks were used to wrap food for cooking. Beer was also made from corn.

15. The men cleared the fields for farming, and they also hunted, fished and built "canoas" (canoes) and wooden oars, and protected the villages. Men fished using a net made from plant fibers. They formed harpoons from wood and tipped them with flint from bone or shells. They made fishing lines from plant fiber. Tainos used a "remora" (suckerfish) to fish by attaching a line to it and letting it swim away from the canoas until it attached itself to a turtle or some large fish. Then they carefully pulled the line in and captured the prey. They would also crush roots and stems of a poisonous shrub and cast it into the rivers. As the fish became stunned by the poison they could be caught by hand; the poison did not affect the fish for eating. The men also harvested conch, oysters, crabs, and other shellfish.

Not much hunting went on because there was no large game. However, the Tainos did hunt for birds, manatees, snakes, parrots, small rodents, iguanas and waterfowl. Spears, described by Columbus as being made with a "fish tooth" or stingray spine, were often used as a hunting tool. No stone spears or arrow points have been found in the islands. The Tainos would hollow out a calabash, cutting 'eye holes' into it. They would wear the calabash over their head while submerged in rivers or in the ocean, and thus were able to catch birds by grabbing them by their legs. They would use hats covered with leaves to catch parrots, which were a delicacy. The men cooked on a "barbacoa" which is where our modern barbecue comes from.

16. An interesting fact is that the "pilón" was first used by the Tainos. Historians such as Fray Iñigo Abbad and Fernandez de Oviedo mention having seen the Indians use giant size vase to mash different things with a mallet. The

ancient pilones were much like the ones we use today - the same shape but quite rustic and waist high. Tainos would place one foot on the base to prevent it from tipping over when hit with the big mallets. Tainos used large hollowed out tree trunks to form waist-tall pilones. The hole was approximately 25 inches in diameter, but varied in size. Some ~~wh~~ were small hand-held pilones, but they were still larger than the ones we use today. Since the Tainos used them, pilones have been found in all the Caribbean islands. The hole for the pilón was burned out and carved using simple rustic tools. Giant macetas (mallets) were carved out of trees also. Tainos used the pilon to mash corn, spices, medicinal herbs and other things. Ingredients to make body paint were also processed in a pilon.

17. Carved "dujos" (seats) made from stone or wood with a raised tail used as a backrest were made by men and women. Dujos were short seats with four short legs with feet. Dujos with very tall backrests were ceremonial seats used by caciques and bohiques (or bohikes). Ceremonial dujos were richly decorated using gold laminate and semiprecious stones. They were a symbol of prestige.

18. Tainos did not mine for gold. Gold nuggets were hand picked from between the gravel in shallow streams and rivers. The gold was used to make earings and nose jewelry. They also pounded the gold to make foils, which were used to decorate ceremonial masks, belts and other artifacts. Both men and women made beaded bracelets and necklaces using coral, shells, and stones.

19. Cotton was cultivated and spun into threads for hammocks and "naguas". Naguas were frontal aprons worn by married women and the only clothing worn by Tainos. The length of the nagua was determined by rank: the longer, the higher the rank. Fibers from the calabash tree were also used to make twine and

rope for baskets. They were also used in construction. Stripped fibers from palm branches were used to make cord. Some of this cord was used for hammocks. One hammock used approximately one mile of cord and was finished in thirteen hours.

20. After finishing the days work, the Tainos would gather to share stories or take part in spiritual and religious ceremonies. The Taino are a deeply spiritual people who prayed to a collection of gods. The Taino respect all forms of life and recognize the importance of giving thanks, as well a honoring ancestors and spiritual beings, called cemi or zemi.

Tainos were ancestor worshipers. They believed that the spirits of the dead remained in their bones so they kept skeletons of relatives in baskets in their dwellings. Often times maybe just the heads of important members of the family were kept. They would keep them in the storage area of the bohío that hung from the ceiling. They believed in an afterlife, so great care was given to the deceased; they were buried with food and other offerings.

21. Cemís were kept in shrine rooms. Tainos credited cemis with powers that affected weather, crops, and childbirth, among other things. The Cemís came in all shapes and sizes including the "three-pointer". The artists completed their own renditions of the cemís, and this form of art and religious representation was abundant. The cemís were carved from stone or wood. They were ~~carved~~ adorned with semi-precious stones and gold. The Cemi take ~~strange~~ forms likes toads, turtles, snakes, alligators and various distorted and hideous human faces.

22. Yaya = Spirit of Spirits, Great Spirit, or Creator

Goiz = Spirit of The Living People

Hupia = Spirit of The Ancestors

– 8 –

Bibi Atabey = Mother Earth, Spirit of the Waters

Baba Guey = Father Sun

Caguana = Fertility Mother

Atabeira = Grandmother Moon

Colibri = (hummingbird) sacred pollinator & disseminator of all new life

Yucahu = Invisible Spirit of the Sky

Juracan = powerful and evil God of Storms (from which the word Hurricane originates from)

Boinayel = God of Rain

Guatauba = the Messenger

Opiyelguobiran = Dog Shaped God of the ~~spirit~~ spirit world

Maketaori Guayaba = Ruler of the Coaybay (underworld)

23. "Areytos" were religious ceremonies held in the "batey" (plaza), often involving neighboring villages. Ceremonial dancing was one of the principal activities. Music and feasting accompanied the ritual dance. Dressing up for an Areyto meant donning colorful body paint, parrot feathers, seashell and coral jewelry, gold nugget earrings and nose jewelry. The Caciques and bohiques wore capes decorated with feathers. The areytos celebrated different achievements, rituals, and social activities, such as the birth of a Cacique's child, marriage ceremonies, death, or a visit by important guests. The Maraca (rattle) and "güiro" (gourd scraper) were played as well as large drums. Conch shell trumpets and flutes made from bones or bamboo reed were played. Highlights included were tribal histories, genealogies, tales of great conquests and battles. Mock battles and ball games were held. Areytos often lasted several days.

- 9 -

24. During religious ceremonies, the Cacique (Chief) would sit on his dujo, his seat of honor. There was a ceremonial beating of drums, and people wore special costumes for the ceremonies, which included paint and feather and would be covered in shells from the knees down.

The Bohique (medicine man or priest) would present the carved figures of the Cemi for prayer and Tainos would induce vomiting with a swallowing stick. The purpose of the vomiting was to purge the body of impurities, both a physical purging and a symbolic spiritual purging. This ceremonial purging and other rites were a symbolic changing before the cemi.

The Bohique had cemis painted on his body, sometimes he'd blacken his face with charcoal and used tobacco, medicinal herbs, chants, and the sounding of the maracas (rattles) to perform a ritual cleansing before inhaling cohoba.

25. The most important and sacred substance for the Taino was cohoba, a psychoactive powder ground from the seeds of the Sacred Cohobana Tree, native to South America and the Caribbean. The Taino mixed cohoba with tobacco to maximize its effect. Taino medicine men took cohoba to cure illnesses for individual patients and Caciques took cohoba to communicate with cemies, spirits & ancestors.

Throughout the ancient Americas, chieftains and shamans have used hallucinogens to connect with the spirits of the other world. Only those in touch with the supernatural realm could heal the sick, predict the future, ensure the fertility of the world and resolve the larger problems of existence.

Natural hallucinogens were regarded by pre-Columbian cultures as sacred and endowed with inherent force. Their preparation and ingestion was associated with elaborate rituals, and they were only consumed by people considered to have sufficient power to communicate with the spirits and ancestors who

- 10 -

dwelled in the other world. The Taino believed it was possible to travel to the supernatural realm during cohoba-induced trances.

26. The Taino people do not believe in death but believe in an afterlife where the good people will be rewarded, where they would meet up with relatives who have passed, and friends.

27. I sincerely believe all of the above and try to implement these beliefs in my everyday life and also try to exercise these beliefs through prayer, song, dance and general worship. However, being the only prisoner in MOCC claiming to be Taino and wanting to worship the Taino way, it is very difficult, especially with the listed defendants tightening their chokehold on my right to religious expression with outrageous rules and restrictions which cite imaginary and exaggerated threats while rolling out the red carpet for Christian inmates, staff, and clergy and giving greater religious freedoms of exercise to other religions in MOCC.

28. I do not profess to be a Taino spiritual expert nor am I without short-comings. I try to attain a unique sense of self-worth by spiritual enlightenment through worshipping in a manner akin to that of my Taino ancestors. Religion was always a touchy and confusing subject at home growing up as a child. My mother, Carmen and her parents lived in Barranquitas, Puerto Rico, one of the three divided Tribal territorial towns (Orocovis and Aibonito, the other two). Mom worshipped the Taino way and I learned from her. My father, Miguel Sr. and his parents were from Rio Piedras, Puerto Rico. They practiced Santeria, a spin-off of African Voodoo and Catholicism. Watching my dad, dressed in all white, blowing cigar smoke and spewing Bacardi Rum at his Voodoo altar while

— 11 —

sacrificing small animals by cutting their throats while my mother was in another room smoking a big cigar, dancing to a melodic enchanting drum beat while nearly naked and barefoot was a normal day in my household.

I thought my dad was psycho for the way he killed those little animals, but at least he did not make me eat them. As a boy, I used to burst into tears when he made me watch him as he slit their throats and he smacked me around for not being "a man".

My mom, on the other hand, was a source of joy and peace. She was a very beautiful woman; long dark hair, light, golden brown skin. Watching her dance was really something I wish I could recall more vividly. I recall her holding my hands as she made me dance with her in my awkward, little-boy way that kids dance as she chanted things I only pray to remember. I have not seen her in many years, my dad beat her up once too many times and she fled one day while I was at school, leaving me to constantly ask myself, why didn't she take me along?

29. I'll be 41 years old this March, 2009 and I have yet to escape the longing to be once more the little boy whose mother held his hands while she danced and worshipped the Taino Way, and I am not sure that I want to. A little piece of me is dying with each word that I use to describe these very personal heart-wrenching memories that I never expected to share with another soul, at least not to have to prove my religious sincerity or the origins of my sincerely held beliefs.

30. Arriving at MOCC back in September, 2004, I quickly discovered I was the only Spanish-speaking Latino in the general population. There are no Spanish language Television channels or radio stations. I petitioned the McBride Administration for a Spanish culture television channel and I was told it would never happen.

- 12 -

31. I knew that living here all alone without any access at all to any kind of Latino culture would destroy me. I pleaded with my court-appointed attorney, Alan Riley, to buy me a Sony CD Walkman, which he did. He later gave me $145.00 to purchase Puerto Rican music discs, which I did.

My sister, Carmen, also purchased 10 Puerto Rican music discs, and so I had 18 music discs.

I borrowed a book about Puerto Rico history from the inter-library loan system which reminded me about my Taino history. This was back in 2005. I decided then and there that the source of spiritual enlightenment would be to worship the Taino way. If I was going to spend the rest of my life atop a mountain in the middle of nowhere, away from my people, away from my culture, away from my language, I would establish a spiritual connection to my ancestors and to my mother, and so began my spiritual journey filled with obstacles.

32. I was hired to clean the gymnasium and I saved most of my monthly pay for the first three months and bought a Sony CD-Radio boom-box. One of the main tenets of Taino worship is dance, music and song as a means of worship.

For someone that might not understand what does Spanish music have to do with Taino worship, I'll explain: Puerto Rico is rich in history going back as far as 9,000 years. Mitochondrial DNA tests conducted on skeletal remains revealed Amerindian DNA. Carbon 14 analysis dated the skeletal remains of the Tainos to 645 AD! The end of the Taino peaceful existence began with the arrival of Columbus in 1492. In the early 1500's Spain ~~introduced~~ brought African slaves to Puerto Rico. Spanish history tells us that the Native Indians became extinct, but the correct term to be used is absorption, not extermination. Puerto Ricans are Taino Indians mixed with Spanish and African. The culture was also absorbed. The food, the language, the dress, dances, superstitions, religions, all blended

- 13 -

into one rich mixture which is known as Puerto Rican culture today. How can we distinguish today what comes from the Natives and what from the Negro? Especially in the intricate cultural pattern of areas such as culinary art, quackery, superstitions, and all the folk knowledge inherited by the new generations over and above modern science? It is due to this unique crossbreeding that we do not consider ourselves Tainos, nor Spaniards, nor Negroes, but as Puerto Ricans.

33.   Taino Native Guakete Gathering is a sacred time for Tainos to meet, to join in dancing, singing, visiting, renewing old friendships and making new ones. This is a time to renew thoughts of the old ways and to preserve a rich heritage.

      Singers are very important figures to Taino culture today. Without them there would be no dance. Original songs were in the native language of the singer. Songs are many and vary but have religious significance to the Taino because of its joy, mourning and stories of history and heritage. Many songs today are not sung in the Native language, yet they still hold special meaning to those who know the songs.

      Dancers have always been a very important part of the life of the Taino, no matter what Tribe. Most dances have evolved into social dances which might have had different meanings in the past. Although dance styles and songs may have changed, their meaning, importance, and religious significance to the Taino has not.

34.   I have written numerous letters to various Taino tribes and related groups, but months have passed and I have yet to receive any reply. It stands to reason that MOCC is interfering with my mail to these

-14-

Taino groups to discourage access to these spiritual advisors for any type of support. Although I cannot prove this allegation, it is strengthened solidly by the fact that the Religious Advisory Committee of Mocc, and the Warden himself, denied my written request for assistance in contacting a religious leader representing my religion and in expanding my personal knowledge, education, understanding and commitment to the beliefs and principals of my Taino religion.

I provided the names and phone numbers of two Taino religious leaders, one in New Jersey and the other in Puerto Rico, asking they be contacted and told of my situation and to request information about becoming a Tribal member, that I am the only Taino in Mocc and request spiritual guidance, that I have written numerous letters to them but that I fear my letters never made it to them, I asked to request instruction on proper Cemi (Totems) worship and prayers, I asked for a calendar of religious holidays and other special dates, I finally requested any books or printed material regarding Taino religion.

Warden Ballard emphatically denied my request for assistance in contacting Taino religious leaders, stating: "Mocc has no interest as an institution in researching your ethnic heritage. That is a personal, social issue for you and it has no bearing on your religious requests. We will not pursue this for you"

Warden Ballard provided an address to a Taino group advising I may write to them, but that only brings me back to the original problem of Mocc barring my mail to and/or from Taino religious groups.

35.   As a Puerto Rican Native of Taino descent, I declare that I am a sincere believer and practitioner of the Taino faith which Tenets are as follows: Cemi worship, ancestral worship, Cacique worship through prayer, song, and dance, holiday feasting, daily prayers and other rituals utilizing

natural tobacco for spiritual cleansing, offering tobacco to the spirits for the prayers to make the journey to Yaya, the Creator. I must allow my hair to grow for spiritual strength and wisdom.

I have attempted to contact Taino spiritual leaders for further guidance and enlightenment, but as I stated above, Mocc has made it impossible.

36. Mocc has made it literally impossible for me to worship and exercise my religion. We were once allowed to smoke but WVDOC/Mocc went "tobacco free" for only the inmates. Now, all Native American inmates in Mocc, regardless of our particular native heritage have been forced to use a Kinni-Kinnick tobacco mixture with an added 75% willow bark mixture. The Kinni-Kinnick tobacco is already a mixture of tobacco and various herbs, now we have to purchase willow bark to add to the mixture.

For the Taino, natural tobacco is sacred and it is my sincerely held belief that I must use natural tobacco for the spiritual journey. Tainos mixed Cohoba and sot weed (hallucinogens) with the natural tobacco, not herbs or willow bark.

After Mocc went tobacco free, I was forced to declare my Taino beliefs so that I could purchase tobacco from an American Indian catalog company so that I may continue to use tobacco for prayers, but Mocc has changed the Native American religious practice policy so often to place greater and greater restrictions that the smoking ceremony is virtually meaningless. Mocc has taken an honored sacred tradition and made it into a dirty, shameful experience and I feel ~~disgusted~~ very disgusted because of it. I know it is only going to get worse.

37. I requested exemption from the hair length restriction for religious reasons.

- 16 -

Even though there is an exemption clause in the grooming policy for religious purposes, my request was denied. MOCC cited security, claiming it would interfere with my identification if I escaped and the need for uniform hair length for gang affiliation avoidance.

These excuses do not hold water for the simple reasons that if I were to escape, WV authorities would only need to advise the media and the public at large to be on the look out for a Puerto Rican/Latino male, 5'8, about 180 lbs, with a beard, long hair, and a twisted, broken nose, with 1 long scar on the right side of his face and another long scar on the left side of the face. The scars are very distinct and noticeable.

Also, hair length does <u>not</u> have the magical identity altering powers such as the eyeglasses Superman wore to disguise himself as Clark Kent, which by the way, I also wear eyeglasses.

Also, MOCC can take pictures of me with short and long hair, and modern photo technology today allows imaging which can alter my appearance in numerous ways for the convenience of MOCC and any other law enforcement groups looking for me during the imaginary escape from MOCC.

As for gang affiliations, this claim is ludicrous. There are no gangs in MOCC! The only gang that I know in MOCC is the Correction Officers. MOCC is the second safest maximum ~~correction~~ security prison in the entire United States. In fact, most of the inmates in administrative segregation and punitive lockdown are there after being found guilty of frivolous, exaggerated non-violent offenses.

I would invite MOCC to prove me wrong and the Court should appoint a Special Master who will determine there are no gangs or gang violence in MOCC.

38.  Finally, I am in punitive segregation, which will more than likely change to Administrative Segregation. I have written to the Warden requesting permission to possess

- 17 -

my boom box and spanish cultural music discs so that I may listen to my discs and sing and dance as part of my religious worship. In the Control Unit group worship is prohibited, a Taino spiritual leader is not available, Taino religious literature is not available, no form of religious exercise is available to me. The tobacco ritual is allowed now once a month for 20-30 minutes utilizing a tobacco mixture which is approximately 90% non-tobacco substance, demeaning the ceremony and sacred tobacco entirely. I am sure the Warden will deny my request for my stereo and music discs even though on Ad-Seg I will not be on Loss of privileges and numerous inmates in the Control Unit possess big stereo units and boomboxes. I truly pray the Warden will grant my request as a sign of good will and understanding of my religious beliefs and the restrictions placed on me to practice my beliefs.

As a non-Christian, non-white, I would truly be surprised, but I am hoping good sense and fairness will prevail because so far a substantial and unreasonable burden has been placed on me and the right to exercise any of my religious beliefs.

I have nothing further at this time.

Respectfully Submitted,

Miguel Angel Delgado

Taken, subscribed, and sworn to before me this 8th day of October, 2008.

OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
LISA R. FRYE
MOUNT OLIVE CORRECTIONAL COMPLEX
ONE MOUNTAINSIDE WAY
MOUNT OLIVE WV 25185
My Commission Expires March 15, 2040

OFFICIAL SEAL AND SIGNATURE OF NOTARY PUBLIC.

18

Miguel Delgado #34388

M.O.C.C.

1 Mountainside Way

Mt. Olive, WV  25185

Nov. 11, 2009

Office of the Clerk

300 Virginia St. E, Room 2400

Charleston, WV    25301

Dear Clerk,

  Please find enclosed 1 original and 3 copies of my pro se civil action, 42 U.S.C. Sec. 1983 to be filed in this Court. The indigent application is also enclosed and it explains that I am truly indigent and cannot afford to pay even a minimal filing fee and request to be allowed to proceed without any initial filing fee.

  When your office sent me the forms, the U.S. Marshal Process and Receipt Forms were not provided, therefore they are not enclosed herein.

Please return to me a copy of the title page of the court forms so that I may have a receipt mark "FILED". I only need a copy of the title page marked "filed", I have my own copy of the claim.

Thank you.

Sincerely,

M. Delgado

PB658 8497
NOV 10 09
$06.85°
CHARLESTON WV 25301
197
4595 $
6781

PRIORITY MAIL

MIGUEL DELGADO #34388
Mt. Olive Corr Complex
1 Mountainside Way
Mt. Olive, WV 25185

LEGAL MAIL

CORRESPONDANCE FROM INMATE
AT MOUNT OLIVE CORRECTIONAL COMPLEX

TO: Office of the Clerk
300 Virginia St. East, Room 2400
Charleston, WV 25301

U.S. MARSHALS SERVICE
X-RAYED

BY:

LEGAL MAIL