UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

MIGUEL ANGEL DELGADO

    Plaintiff,

v.                                                             CIVIL ACTION NO. 2:09-cv-1252

DAVID BALLARD,
CLARENCE J. RIDER,
JAMES McCLOUD, and
CHARLENE SOTAK,
employees of the West Virginia Division of Corrections,
sued in their official and individual capacities,

    Defendants.

## DAVID BALLARD, CLARENCE J. RIDER, JAMES McCLOUD, AND CHARLENE SOTAK'S MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS

David Ballard, Clarence J. Rider, James McCloud, and Charlene Sotak, by counsel Dwayne E. Cyrus and Jason Wandling of Shuman, McCuskey & Slicer, PLLC, submit the following in support of their Motion to Dismiss Mr. Delgado's Complaint.

### I.  STATEMENT OF FACTS

Mr. Delgado is an inmate incarcerated at Mount Olive Correctional Center (MOCC). His 71 page Complaint alleges, generally, the following:

Mr. Delgado is a Taino-Arawak Native American. His Complaint provides extensive and comprehensive information regarding his religion; this brief will not repeat the allegations, nor will this brief attempt to discern whether Mr. Delgado's description of his religion is accurate. The Defendants are Warden David Ballard, Chaplain Clarence Rider, Correctional Officer James McCloud, and Inmate Grievance Coordinator Charlene Sotak. He alleges that, "Defendants Ballard, Rider, McCloud, and Sotak violated the Establishment Clause and Free Exercise Clause of the First

Amendment by protecting, proselytizing, and favoring the practice of other mainstream religions, especially Christianity, by granting those inmates greater rights and privileges in the exercise of their beliefs while placing outrageous and blasphemous restrictions on plaintiff's exercise of his religion which has caused plaintiff to suffer a spiritual death and a virtual loss of faith." Complaint at 11.

He alleges that the following core actions are violations of the First and Fourteenth Amendments to the Constitution and the Religious Land Use and Institutionalized Persons Act:

1. "defendants seized and destroyed plaintiff's tobacco, denying plaintiff the spiritual need to smoke tobacco daily as a ritual necessary to communicate with the spirits";

2. "Defendants have denied plaintiff the need to grow his hair long in the back while maintaining the rest of the hair short";

3. "Defendants have denied plaintiff the need to posses his stereo and all his compact discs full-time to listen, sing and dance in accordance with Taino spiritual beliefs";

4. "Defendants have denied plaintiff any right to correspond with any Latino or Taino organizations or religious groups"; and

5. "Defendants have denied plaintiff's requests for assistance in contacting a Taino organization or leader for spiritual guidance, advice or religious literature." Complaint at 11.

Elsewhere, he variously alleges:

- the Defendants' grievance and religious assistance programs are "meaningless" (12)
- he does not have access to Spanish language television or salsa albums (14)
- he is forced to smoke from a pipe rather than to smoke loose tobacco (17)
- MOCC policies regarding Native American worship are "retarded" (18)
- he is not allowed to vomit as part of his prayer ceremony (20)
- he is only allowed to use a "mini toothbrush" instead of a "regular toothbrush" (28)
- he did not receive a copy of *King* magazine (35)
- the tobacco mixture currently in use at MOCC (a blend of herbs, willow bark, and tobacco) is unsatisfactory for Taino ceremonies (37)
- he may only mix tobacco with "cohoba or sot weed (hallucinogens)" (35)
- he has not received copies of *Prison Legal News* (39)

- he believes the tobacco mix is carcinogenic (41)
- he did not receive a copy of *Maxim* magazine (44)
- he was not allowed to use a stereo all day on his birthday and on Puerto Rican Day for dancing (45)
- Mr. McCloud is "an ignorant racist ... he provides retarded responses to my grievances about the Red Willow Bark" (45)
- he is not allowed "hair grease" for his "wooly, dry, and brittle" hair while in segregation (47)
- the one hour of cd player use he is allowed is insufficient for "a Guakete gathering or Araguaco dance which normally will last many hours and can even go on as long as several days" (53)

He also notes the following complaints that appear unrelated to his religion claims:

- hooded sweatshirts were seized and the hoods cut off (67)
- the food offered is not good (67)
- he does not receive Cinemax (67)
- he receives "tiny portions" of food (67)
- "the water is rusty" (67)

He admits he did not inform his religious inclination until tobacco was banned from MOCC. Complaint at 16. He also admits that, contrary to his allegations, MOCC officials have allowed him to attempt to communicate with Taino religious advisers. Complaint at 15.

Tobacco use at MOCC was barred in 2008. Since that time, MOCC has allowed Native Americans to gather to smoke a mixture of tobacco and tobacco substitutes as part of various prayer groups. Native Americans, no matter their tribe or region of origin, are allowed to meet to perform smoke and tobacco rituals on a regular basis pursuant to Operational Procedure 5.08. During the time described in Mr. Delgado's Complaint, two versions of the policy have been in effect. The first, which went into effect on 1 February 2008, is attached as Exhibit One. The second, which went into effect on 1 July 2009, is attached as Exhibit Two. Both policies bar the use of more than 25% tobacco in smoking rituals.

His Complaint advances claims pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1(a). He alleges that these Defendants deprive

him of First Amendment and Equal Protection rights.

This Court analyzed nearly identical issues last year in *Bailey v. Rubenstein*, 2009 WL 1024614 (April 15, 2009). The opinion is attached as Exhibit Three. Briefly, the *Bailey* court held that MOCC's smoking policies do not violate the Constitutional rights of Native Americans. Nothing has changed with regard to tobacco since this Court issued its *Bailey* opinion. Accordingly, for reasons stated fully below, this Court should dismiss with prejudice Mr. Delgado's Complaint.

## II. STATEMENT OF LAW

**A. Mr. Delgado's Complaint should be dismissed because it does not state a claim to relief that is plausible on its face.**

"To survive a motion to dismiss, a Complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S.-- (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Once a claim has been adequately stated, it may be supported by showing any set of facts "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at -- (citing *Twombly* at 556). A claim must be dismissed, however, if it is merely conceivable and fails to cross " 'the line from conceivable to plausible.' " *Id.* (quoting *Twombly* at 570).

**B. This Court should dismiss Mr. Delgado's Complaint because the Defendants do not violate his First Amendment rights by banning tobacco from Mount Olive Correctional Center.**

This Court should dismiss Mr. Delgado's Complaint because it has already held that MOCC's ban on inmate tobacco use does not violate the First Amendment to the United States Constitution. *Bailey v. Rubenstein*, 2009 WL 1024614 (S.D. W.Va. unpublished decision dated April 15, 2009). At heart, Mr. Delgado's claims are identical to those advanced by Mr. Bailey. The applicable reasoning in this case is no different.

Inmates clearly retain certain constitutional protections notwithstanding their convictions and confinement in prison. *Hudson v. Palmer*, 468 U.S. 517 (1984). "[F]ederal courts must take cognizance of the valid constitutional claims of prison inmates." *Turner v. Safley*, 482 U.S. 78 (1987). Generally speaking, to prevail upon a claim under 42 U.S.C. § 1983, a Plaintiff must prove that (1) a person acting under color of State law (2) committed an act which deprived him of an alleged right, privilege, or immunity protected by the Constitution or laws of the United States.

Inmates retain the right to practice their religion while in prison. *O'Lone, v. Estate of Shadbazz*, 482 U.S. 342, 348 (1987). The First Amendment of the United States Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or of the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." The First Amendment applies to West Virginia state actions through the Fourteenth Amendment. *Board of Educ. of Kiryas Joel Vill. Sch. Dist. v. Grumet*, 512 U.S. 687, 690 (1994). Under the Free Exercise Clause, States are prohibited from enacting laws "designed to suppress religious beliefs or practices." *Hines v. South Carolina Dept. of Corrs.*, 148 F.3d 353, 357 (4th Cir. 1998).

The United States Supreme Court has formulated two analyses to determine whether a State law violates the Free Exercise Clause of the First Amendment. First, if the law proscribes or prohibits conduct irrespective of religious and secular views, the law is considered neutral and therefore, does not violate the Free Exercise Clause. *Booth v. Maryland*, 3275 F.3d 377, 380 (4th Cir. 2003)( citing *Employment Div., Dept. of Human Res. v. Smith*, 494 U.S. 872, 876-79 (1990)). Second, if the law is reasonably related to legitimate penological interest, then the law is valid and does not violate the Free Exercise Clause. *O'Lone*, 482 U.S. at 349. To determine the reasonableness of the law, the Court should consider the follow factors:

> (1) a regulation must have a logical connection to legitimate governmental interest invoked to justify it; (2) the inmates should have alternative means of exercising their religious rights; and (3) accommodating the inmates' rights should not severely impact other inmates, prison officials and allocation of prison resources generally.

*Hines* at 358.

With regard to the first factor, Mr. Delgado's allegations do not indicate that his rights under the First Amendment have are violated. In consideration of Native American and Taino religious beliefs, the WVDOC and MOCC have made an exception to their general smoking ban to accommodate those beliefs by allowing ritualistic smoking of a mixture or blend of substances during religious ceremonies. Their control of and restrictions upon the possession and use of the substances including tobacco is reasonably related to their legitimate penological interest in eliminating any possibility that inmates might obtain them because they are contraband outside of their use during religious ceremonies.

With regard to the second fact, Mr. Delgado's allegations reveal that he has alternative means of exercising his religious rights. The Supreme Court of the United States has explained that the First Amendment does not require prison officials to provide inmates with the opportunity to exercise every facet of their religions. *O'Lone*, 482 U.S. 342 at 351-52. Rather, an inmate's right to exercise his religion is preserved as long as he is not "deprived of all forms of religious exercise...." *Id.* at 352. As this Court found in *Bailey*, Mr. Delgado and other inmates practicing Native American religions at MOCC, "retained the ability to participate in other [Native American] religious ceremonies." The policies at issue in this case provide opportunities for the practice the Taino and other Native American religions. Because the WVDOC and MOCC policies do not deprive inmates of all opportunities to practice Native American religions, the absence of alternative opportunities to practice specific aspects of that religion does not render the policies unreasonable.

This Court has already found the prison regulations restricting tobacco use are reasonably related to a legitimate penological interest. That interest is the prevention of inmates acquiring tobacco, which is contraband, outside of religious ceremonies.

In conclusion, MOCC has a compelling governmental interest to control the introduction of contraband, to include tobacco products, into the inmate population. Accordingly, this Court should enter an Order dismissing Mr. Delgado's First Amendment claim.

**C.     This Court should dismiss Mr. Delgado's Complaint because the Defendants do not violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.**

In order for Mr. Delgado to state a claim for an equal protection violation in a prison setting, he, "must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). See also, *Johnson v. California*, 543 U.S. 499 (2005) (holding that to state a cognizable equal protection claim, a plaintiff must allege that defendants acted with intentional discrimination against a class of inmates which included plaintiff). To meet this requirement, Mr. Delgado must set forth "specific, non-conclusory factual allegations that establish improper motive." *Williams v. Hansen*, 326 F.3d 569, 584 (4th Cir. 2003).

These Defendants acknowledge that denying the adherents of one religion a basic feature of their religion while granting the same feature to the adherents of another religion is a violation of the Equal Protection Clause. Thus, the question is whether Mr. Delgado is being treated differently in the exercise of his Taino religion than others in the exercise of other religions. If so, the next inquiry is whether the disparity in treatment is justified by legitimate penological interests. *Morrison* at 657.

As noted above, the ban on tobacco use at MOCC applies across the board. Further, as shown above, this Court has already found that the tobacco restrictions serve a legitimate penological

interest. Accordingly, this Court should enter an Order that dismisses with prejudice Mr. Delgado's equal protection claim.

**D. This Court should dismiss Mr. Delgado's Complaint because the Defendants did not violate the Religious Land Use and Institutionalized Persons Act.**

This Court should dismiss Mr. Delgado's Complaint because it has already held that MOCC's ban on inmate tobacco use does not violate the Religious Land Use and Institutionalized Persons Act.

The RLUIPA, in relevant part, provides that:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person-
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). "Government" includes any official of "a State ... or other governmental entity created under the authority of a State" and "any other person acting under color of State law." Id. at § 2000cc-5(4)(A).

The 42 U.S.C. § 2000cc-2(b) provides:

> If a plaintiff produces prima facie evidence to support a claim alleging a violation of the Free Exercise Clause or a violation of 2000cc of this title, the government shall bear the burden of persuasion on any element of the claim, except that the plaintiff shall bear the burden of persuasion on whether the law (including a regulation) or government practice that is challenged by the claim substantially burdens the plaintiff's exercise of religion.

Mr. Delgado has the initial burden of demonstrating that the WVDOC and MOCC's policies have substantially burdened his religious activities. In *Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006), the Fourth Circuit Court of Appeals adopted the definition of "substantial burden" announced

by the United States Supreme Court in the Free Exercise Clause context in *Thomas v. Review Bd. Of Ind. Employment Sec. Div.*, 450 U.S. 707, 718 (1981), stating that "a substantial burden on religious exercise occurs when a state or local government, through act or omission, 'put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" If Mr. Delgado can demonstrate that the WVDOC and MOCC's policies have substantially burdened his religious activities, the Defendant then must prove that the policies are in furtherance of a compelling governmental interest and are the least restrictive means of furthering that compelling governmental interest.

This Court has already rejected this claim. In *Bailey v. Rubenstein*, 2009 WL 1024614 (S.D. W.Va. unpublished decision dated April 15, 2009), this Court turned aside the plaintiff's RLUIPA arguments:

> by their policies as set forth in Attachment # 2, the Division of Corrections and MOCC recognize that Native American religious ceremonies include smoking and have allowed it notwithstanding their general ban on smoking. Clearly, Plaintiff may participate in ritualistic smoking during Native American religious ceremonies at MOCC. In alleging that his activities are substantially burdened in this regard, his claim has no factual basis and is therefore frivolous. There is no indication that Plaintiff has been or will be substantially harmed. Plaintiff's mere insinuation that the Division of Corrections and MOCC do not accommodate dietary and pharmaceutical restrictions of his Native American religion and hold religious services as frequently as he would like does not suffice to state a claim which the Court might find cognizable. The focus of Plaintiff's Motion for Injunction is upon the Division of Corrections' and MOCC's policies respecting smoking as they impact his religious activities, and in this regard, he can have no relief under RLUIPA.

*Bailey*, supra.

Other courts have held that a tobacco substitute does not violate an inmates right to practice his religion. *Farrow v. Stanley*, 2004 WL 224602 (D.N.H. unpublished order dated February 05, 2004) (holding that the inmate did not demonstrate by substantial evidence that the Defendants denied him a meaningful opportunity to practice his religion by requiring him to use kinnikinick as

a substitute for tobacco in religious practices).

Lastly, in order to state a RLUIPA claim against these Defendants as individuals, Mr. Delgado must establish that they acted with the requisite intent. In the RLUIPA context, the Fourth Circuit has held that such a claim requires more than negligence and is satisfied by intentional conduct. *Lovelace* at 194-95. In this case, the uncontroverted evidence establishes that Defendants Ballard, Rider, McCloud, and Sotak were not intentionally nor deliberately indifferent to Plaintiff's alleged religious rights. These Defendants acted pursuant to WVDOC policy. These Defendants also acted promptly in response to Mr. Delgado's repeated grievances about his religious practices. Further, individuals sued in their official capacity are not liable for money damages under the RLUIPA. *Madison v. Virginia*, 474 F.3d 118 (4th Cir. 2006).

This Court has already examined claims that are nearly identical to those advanced by Mr. Delgado and found them wanting. Accordingly, this Court should enter an Order that dismisses with prejudice Mr. Delgado's RLUIPA claims.

### E. Mr. Delgado's Complaint should be dismissed against these Defendants because they are entitled to qualified immunity from suit.

To succeed on his claims and defeat these Defendants' qualified immunities from suit, Mr. Delgado must prove two elements: (1) that objectively the deprivation of a basic human need was "sufficiently serious," and (2) that subjectively these Defendants acted with a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The objective component is satisfied only where there is a denial of "the minimal civilized measure of life's necessities." *Id.* However, the objective component is only part of the equation.

The subjective component must also be met by a showing of deliberate indifference by prison officials. *Id.,* at 303. "[D]eliberate indifference entails something more than mere negligence [but]

is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994).

In the case at bar, Mr. Delgado has not alleged any fact or presented any evidence that these Defendants deprived him of a basic human need, much less one that was sufficiently serious.

Accordingly, Mr. Delgado can prove no set of facts that will support a finding that these Defendants are not entitled to the protections of qualified immunity. As such, these Defendants ask that this Court dismiss the Plaintiff's Complaint.

### III. CONCLUSION

This Court should enter an Order dismissing with prejudice Mr. Delgado's Complaint because it has already turned aside the arguments he advances and, further, because the Defendants did not violate his First or Fourteenth Amendment rights, the Defendants did not violate the RLUIPA, and the Defendants are entitled to qualified immunity.

**DEFENDANTS,**
**by counsel**

/s/ Jason Wandling
Dwayne E. Cyrus (WVSB 5160)
Jason Wandling (WVSB 9259)
Counsel for Defendant
Shuman, McCuskey & Slicer P.L.L.C.
P.O. Box 3953
Charleston, WV 25339-3153
Telephone:    304-345-1400
Fax:          304-343-1826
E-mail:       dcyrus@shumanlaw.com
              jwandling@shumanlaw.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

MIGUEL ANGEL DELGADO

    Plaintiff,

v.                                                                                                               CIVIL ACTION NO. 2:09-cv-1252

DAVID BALLARD,
CLARENCE J. RIDER,
JAMES McCLOUD, and
CHARLENE SOTAK,
employees of the West Virginia Division of Corrections,
sued in their official and individual capacities,

    Defendants.

## CERTIFICATE OF SERVICE

I certify that on February 17, 2010, I electronically filed the foregoing Memorandum of Law in Support of these Defendants' Motion to Dismiss with the Clerk of the Court using the CM/ECF system which will send notification of such filing to no known CM/ECF participants.

I certify that I have mailed the document by United States Postal Service to the following non-CM/ECF participants:

    Miguel Delgado # 34388
    Mt. Olive Correctional Complex
    1 Mountainside Way
    Mt. Olive, WV 25185

                                                                                        /s/ Jason Wandling