UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON


MIGUEL ANGEL DELGADO,

      Plaintiff,

v.                                        Case No. 2:09-cv-01252

DAVID BALLARD,
CLARENCE J. RIDER,
JAMES McCLOUD, and
CHARLENE SOTAK,
all sued in their official
and individual capacities,

      Defendants.


<u>PROPOSED FINDINGS AND RECOMMENDATION</u>

This is a civil rights action in which Plaintiff, an inmate at Mount Olive Correctional Complex ("MOCC"), seeks injunctive, declaratory and compensatory relief for alleged violations of his right to practice and freely exercise his Taino-Arawak Native American [Puerto Rican] religion. (Complaint, docket # 2, at 8.) This action is filed pursuant to 42 U.S.C. §§ 1983 and 2000cc *et seq.* (the Religious Land Use and Institutionalized Persons Act, "RLUIPA").

Pending before the Court is Defendants' motion to dismiss with exhibits (# 14) and memorandum in support (# 15). Plaintiff has filed a response (# 33) with exhibits. Defendants did not file a reply.

Plaintiff's Complaint, an excessively lengthy document, alleges that David Ballard (the warden), Clarence Rider (chaplain and Religious Services Coordinator), James McCloud (commander of the segregation unit where Plaintiff is housed), and Charlene Sotak (Grievance Coordinator) have substantially burdened his attempts to practice his sincerely held Taino religious beliefs, and have favored mainstream Christian religions.  In particular, Plaintiff asserts that as a Taino Indian from Puerto Rico (as opposed to Native American), his rights have been violated with respect to his spiritual needs to smoke tobacco daily, to grow some of his hair long, to listen to certain music full-time, and to correspond with Latino or Taino organizations or religious groups.  (# 2, at 11, 49.)  He also claims that the defendants have retaliated against him for filing multiple grievances by seizing and destroying his mail and magazines and by filing disciplinary charges against him. Id. at 12.  Plaintiff contends that the defendants have discriminated against him based on his race, heritage, language, culture and spiritual beliefs, and have denied him meaningful process due to the lack of an impartial reviewer of his requests concerning his religion.  Id.  Finally, he alleges that the defendants violated the American Indian Religious Freedom Joint Resolution Public Law 95-341, dated August 11, 1978.  Id.

The relief sought by Plaintiff is a declaratory judgment that the defendants have violated Plaintiff's rights under the

Constitution, RLUIPA and the Joint Resolution, an injunction, and an award of compensatory and punitive damages. Id. at 69.

### Defendants' Motion to Dismiss

The defendants assert that Plaintiff's Complaint fails to state a claim upon which relief can be granted, that they did not violate his First Amendment rights by banning tobacco use at MOCC, that they have not violated the Equal Protection Clause of the Fourteenth Amendment or RLUIPA, and that they are entitled to qualified immunity. (# 15.) In support of their motion, the defendants attached copies of MOCC Operational Procedure # 5.08 dated February 1, 2008 regarding religious programs (Ex. 1), Operational Procedure # 5.08 dated July 1, 2009, and a decision by the Hon. Joseph R. Goodwin, Chief Judge, in Bailey v. Rubenstein, No. 2:08-cv-1204, 2009 WL 1024614 (S.D. W. Va. April 15, 2009).[1] In Bailey, Judge Goodwin ruled that the MOCC ban on inmate smoking did not violate an inmate's First Amendment right to practice his individualized Native American religion and that MOCC has a compelling governmental interest to control the introduction of contraband, including tobacco products, into the inmate population.

Plaintiff's response argues that he has been "fully and completely barred by defendants from any religious exercise," and has experienced discrimination, retaliation and "meaningless

---

[1] The Bailey decision refers to the Proposed Findings and Recommendation as having been written by the undersigned; that document was written by U.S. Magistrate Judge R. Clarke VanDervort.

3

process." (# 33, at 1.)   He points out that he is not Native American of the United States; he is Native American of the West Indies/Greater Antilles (*i.e.*, Taino, cousins to the Arawak Indians of South America). Id. at 3.   He argues that their religious beliefs are not the same and it is wrong to assume so. Id. Plaintiff claims that Taino/Arawak use common tobacco (*Nicotiana tabacum*), while Native Americans use wild tobacco (*Nicotiana rustica*). Id. He contends that Defendants have caused him to suffer a substantial burden by forcing Plaintiff to use red willow bark, and by destroying the tobacco which they had allowed him to purchase. Id. Plaintiff also alleges that Defendants have retaliated against him by withholding his magazines, denying him access to Latino/Taino organizations and filing disciplinary reports against him due to his use of the grievance process to assert his rights under the Free Exercise Clause. Id.

Plaintiff's specific allegations are as follows:

- The tobacco ban went into effect on March 1, 2008. Thereafter Plaintiff was allowed to purchase common tobacco, which he received on or about July 22, 2008. The policy was changed and his tobacco was seized and destroyed on January 5, 2009.
- Plaintiff has not been allowed to grow his hair long in the back while keeping the rest of his hair short. He notes that different grooming rules apply to female inmates, and they are allowed to grow their hair long.
- Plaintiff is not allowed to possess his stereo and all his compact discs full-time to listen, sing and dance in accordance with his spiritual beliefs. Prison officials limit him to one hour of listening to music per week. He argues that other inmates in segregation have more access to music.
- Plaintiff is not allowed to correspond with Latino/Taino organizations or religious groups and prison officials have withheld magazines and other mail. Plaintiff implies that his

4

letters to such organizations have not been mailed or that
their responses were not delivered to him by the MOCC
mailroom.
- Plaintiff was not allowed to receive a book on Mayan culture
because it was written in Spanish.
- Plaintiff wrote a letter to William Boxall in Ontario, Canada
and provided a voucher for postage, but it was not mailed.
- Prison officials falsely state that mail is delivered or
inmates receive notice of non-delivery.
- Plaintiff's administrative segregation security level was not
decreased even though he has not committed acts of violence.
- Adherents to mainstream religions have numerous hours to
worship, have bountiful feasts, and many religious books,
movies, videos in the library; he does not.
- His religion requires common tobacco, not a mixture, and not
red willow bark.
- Plaintiff's requests for special meals related to his religion
were denied.  His requests for a cigar and access to his music
on the anniversary of his father's death were denied.

Id.  Plaintiff also uses the term "Boriken-Taino" to describe his

spirituality.  Id.

### Rule 12(b)(6) - Failure to State a Claim

In Bell Atlantic Corp v. Twombly, 550 U.S. 544, 570 (2007),

the Supreme Court observed that a case should be dismissed for

failure to state a claim upon which relief can be granted if,

viewing the well-pleaded factual allegations in the complaint as

true and in the light most favorable to the plaintiff, the

complaint does not contain "enough facts to state a claim to relief

that is plausible on its face."  While the complaint need not

assert "detailed factual allegations," it must contain "more than

labels and conclusions" or a "formulaic recitation of the elements

of a cause of action."  Id. at 555.

The Supreme Court further explained its holding in Twombly in

_Ashcroft v. Iqbal_, 129 S. Ct. 1937 (2009), a civil rights case.
The Court wrote:

> Two working principles underlie our decision in
> _Twombly_. First, the tenet that a court must accept as
> true all of the allegations contained in a complaint is
> inapplicable to legal conclusions. Threadbare recitals
> of the elements of a cause of action, supported by mere
> conclusory statements, do not suffice. [_Twombly_, 550
> U.S.] at 555, 127 S. Ct. 1955 (Although for the purposes
> of a motion to dismiss we must take all of the factual
> allegations in the complaint as true, we "are not bound
> to accept as true a legal conclusion couched as a factual
> allegation" (internal quotation marks omitted). Rule 8
> . . . does not unlock the doors of discovery for a
> plaintiff armed with nothing more than conclusions.
> Second, only a complaint that states a plausible claim
> for relief survives a motion to dismiss. _Id._, at 556. *
> * *
>
> In keeping with these principles a court considering
> a motion to dismiss can choose to begin by identifying
> pleadings that, because they are no more than
> conclusions, are not entitled to the assumption of truth.
> While legal conclusions can provide the framework of a
> complaint, they must be supported by factual allegations.
> When there are well-pleaded factual allegations, a court
> should assume their veracity and then determine whether
> they plausibly give rise to an entitlement to relief.

129 S. Ct. at 1949-50.

RLUIPA

Defendants contend that Plaintiff's complaint should be
dismissed because his claims are identical to those of the
plaintiff in Bailey v. Rubenstein, supra. (# 15, at 4.) They
attempt to rely on Hines v. South Carolina Dep't of Corrections,
148 F.3d 353 (4th Cir. 1998), a pre-RLUIPA case involving a
grooming policy. Id. at 5-6. Defendants assert that Plaintiff has
alternative means of exercising his religious rights and MOCC's

policies are reasonably related to the compelling governmental interest of controlling the introduction of contraband (tobacco) into the inmate population.

Plaintiff responds that he has no alternative means of exercising his religion and that MOCC's policies are not a reasonable response to the goal of preventing trafficking in contraband among inmates.  (# 33, at 4-5.)

In <u>Madison v. Riter</u>, 355 F.3d 310, 315 (4th Cir. 2003), a case involving kosher meals, the Fourth Circuit held that <u>Hines</u> and the neutrality principal established in <u>Employment Div., Dep't of Human Res. v. Smith</u>, 494 U.S. 872, 878 (1990), do not foreclose liability under RLUIPA, which Congress enacted to protect prisoners and other institutionalized persons who face substantial burdens in practicing their religious faiths, including substantial burdens that are imposed in an incidental manner.  Accordingly, the undersigned will analyze Plaintiff's claims in light of the Fourth Circuit's holdings in <u>Smith v. Ozmint</u>, 578 F.3d 246 (4th Cir. 2009), not <u>Hines</u>, which is a pre-RLUIPA case.  In <u>Smith</u>, the Fourth Circuit addressed a grooming policy which required a Rastafarian inmate to have close-cropped hair, and authorized prison staff to forcibly shave an inmate's head.  The Court found that prison officials had not shown that their policy furthers a compelling governmental interest by the least restrictive means.  578 F.3d at 254.

7

RLUIPA provides as follows:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person –
>
> > (1) is in furtherance of a compelling governmental interest; and
> > (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). "If a plaintiff produces prima facie evidence" of an RLUIPA violation, "the government shall bear the burden of persuasion on any element of the claim, except that the plaintiff shall bear the burden of persuasion on whether the [policy] or government practice that is challenged by the claim substantially burdens the plaintiff's exercise of religion." Id. § 2000cc-2(b). 578 F.3d at 250.

A "substantial burden on the religious exercise of a person" "'put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs,' or . . . forces a person to 'choose between following the precepts of her religion and forfeiting [governmental] benefits, on the one hand, and abandoning one of the precepts of her religion . . . on the other hand.'" Id. at 251 (quoting Lovelace v. Lee, 472 F.3d 174, 187 (4th Cir. 2006)). Again quoting from Lovelace, the Smith decision notes that courts may "not judge the significance of the particular belief or practice in question." Lovelace 472 F.3d at 187 n.2; id. RLUIPA

8

defines "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7).

The <u>Bailey</u> case, on which Defendants rely, addressed MOCC Operational Procedure # 5.08, "Religious Programs," which provides inmates practicing Native American religions with opportunities for ritualistic smoking. That Procedure includes a detailed "Warden Approved Religious Practice," which addresses "Tobacco Issues" and the "Native American Prayer Service" as follows:

**C.  Tobacco Issues:**
1.   MOCC has a compelling governmental interest to control the introduction of contraband, to include tobacco products, into the inmate population. Further, MOCC must consider the costs associated with the use of Staff/Officers, space availability, and time factors in the administration of any program, religious or otherwise. With the documented cases of tobacco from the tobacco stored in the Chapel and used in the Native American prayer ceremonies being found in the possession of inmates on the yard, and the case of tobacco orders missing, this procedure is the least restrictive alternative available instead of banning the use of tobacco all-together. This does not pose a substantial burden on the exercise of the Native American Religion since provision is being made to facilitate a prayer time and other means are available to practice that belief.

2.  There is no requirement that the pipe mixture include tobacco, though many inmates desire that tobacco be included in the mixture. At the time this procedure is adopted, the approved pipe mixture at MOCC shall be made up of red willow bark and any tobacco blend. The tobacco in the pipe mixture shall not contain more than twenty-five percent (25%) tobacco by volume.

3.  Each Native American Religion participant who desires to use the pipe mixture is responsible to purchase the tobacco blend and red willow bark from an approved catalog. These items may not be considered for home

packages.

4.   The current participants who have tobacco blends in secure storage must provide enough red willow bark to the Chapel to mix with their tobacco blends to meet the maximum twenty five percent (25%) tobacco by volume requirement.  This must be done by **November 30, 2008** in order to continue using the pipe mixture.  After that date no one may use the pipe mixture until they fulfill the requirement.

5.   Inmates may order the following maximum amounts of the items listed below in order to make their pipe mixture.  Each inmate must possess his own items.  All orders will reflect the 6-2 mixture.  The items will then be mixed together by Chapel staff.  The mixture then must be stored in a secure location designated by the Religious Services Coordinator/designee.  Also note; no more orders may be made until approximately only one ounce of mixture remains.  Chapel staff will make that determination.  The Warden may, at his/her discretion, permit non-tobacco pipe mixtures and/or pre-mixed pipe mixtures.
    a.   Kinni-kinnick/tobacco blends - 2 ounces (No tobacco leaves or twist tobacco will be permitted)
    b.   Red Willow Bark - 6 ounces

6.   The chapel will measure out a level and not packed down amount of the pipe mixture for use during the Native American Prayer service.   The distribution will be according to the Religious Services Schedule.

7.   Inmates found guilty of any violation relating to the introduction of the contraband items of tobacco, the red willow bark and tobacco mixture and/or herbs into the inmate population in any way shall be subject to the loss of the use of tobacco, the red willow bark and tobacco mixture and/or herbs (in addition to any prescribed penalty) as follows:
- First Offense - Three months loss of use of tobacco, the red willow bark and tobacco mixture and/or herbs
- Second Offense - One year loss of use of tobacco, the red willow bark and tobacco mixture and/or herbs
- Third Offense - Permanent loss of use of tobacco, the red willow bark and tobacco

mixture and/or herbs

**D.  Native American Prayer Service**

1.  The Chapel will attempt to provide an opportunity for a Native American Prayer Service once a week.  Services will be cancelled if adequate Security personnel are not available.

2.  Native American Religion participants are permitted to possess a personal prayer pipe and a smudge bowl (conch shell) in cell for ceremonial use with or without using tobacco.  Based on advice we have sought from other jurisdictions, it is an acceptable practice and a least restrictive alternative to have the opportunity to use the prayer pipe without tobacco and/or to smudge in cell using items from a medicine bag.  Prayer pipe <u>bags</u> (**NOT CASES**), prayer pipes, and smudge bowls (conch shell) are allowable in cell items and may be brought to the scheduled Native American prayer service.

3.  MOCC will attempt to have a catalog with allowable items available for inmate use.  These catalogs will be placed in the housing units and/or the Chapel.  **All orders must be approved by Chapel staff.**

4.  All Native American Religion Participants are permitted to bring their prayer pipes/smudge bowls to each scheduled Native American Prayer service for ceremonial purposes.  **However, the Chapel will attempt to provide each individual participant an opportunity to use Kinni-Kinnick/Tobacco and/or Herbs with their prayer pipes/smudge bowls by virtue of a posted schedule of services.  An attempt will be made to schedule an opportunity for each participant to utilize a red willow bark and tobacco mixture at least once a month.  However, such scheduling may also be affected due to institutional needs, staffing levels or other related matters.**  Additionally, blessing items such as a medicine bag or prayer pipe may only be done at the time designated for the particular inmate to use the red willow bark and tobacco mixture and/or herbs.  The Chapel will develop a monthly Religious Services Schedule indicating what days each group of inmates will have the opportunity to use the red willow bark and tobacco mixture and/or herbs.

5.  Inmates attending the Native American Prayer service who are **<u>not</u>** using the red willow bark and tobacco mixture

11

will sign the attendance sheet in the Chapel and then are to proceed directly to the outside service area, the grassy area between the Chapel and Visitation or as otherwise directed.

6. Inmates attending the Native American Prayer service who **are** using the red willow bark and tobacco mixture and/or herbs will sign the attendance sheet in the Chapel, proceed to the office (designated area) where distribution of the items takes place, and after receiving the items are to proceed to **the outdoors area of visitation thru the door leading directly to that area from the grassy area between the Chapel and Visitation or as otherwise directed.** After completing their ceremony the inmate is to leave the area. As always, all inmates are subject to search, including strip searches, for contraband at the conclusion of any ceremonies performed.

7. The Native American Prayer Service will be scheduled at a time when the Inmate Visitation program is not open.

(# 14, Ex. 2 (Procedure effective July 1, 2009) at 3-4.)

Applying <u>Smith</u> and RLUIPA to the instant case, the undersigned proposes that the presiding District Judge **FIND** as follows:

a. Plaintiff has alleged with specificity that his religious exercise requires frequent use of tobacco only, not a mixture, and that Taino/Arawak spirituality is different from "Native American Religion."

b. Plaintiff has alleged with specificity that his religious exercise requires that he grow some of his hair long, to listen to certain music full-time and that he have correspondence with Latino/Taino organizations or religious groups.

c. Plaintiff has alleged with specificity that Operational Procedure # 5.08 substantially burdens his exercise of religion.

d. Plaintiff's allegations are taken as true for the purpose of

12

considering the motion to dismiss.

e.  Plaintiff has produced prima facie evidence that Defendants and Operational Procedure # 5.08 violate his rights under RLIUPA.

f.  <u>Bailey</u> addresses only tobacco use in the context of "Native American Religion."

g.  Plaintiff has stated a claim upon which relief may be granted.

<u>Equal Protection and Due Process</u>

Plaintiff's Complaint alleges that all four defendants have violated his right to equal protection of the law by discriminating against him because of his race, heritage, language, culture and spiritual beliefs.  (Complaint, # 2, at 12.)  He asserts his right to due process is violated because there is no independent or disinterested person to review his grievance and other prison forms relating to his religious requests.  <u>Id.</u>

Defendants "acknowledge that denying the adherents of one religion a basic feature of their religion while granting the same feature to the adherents of another religion is a violation of the Equal Protection Clause."  (# 15, at 7.)  They contend, however, that Plaintiff is not being treated differently from others similarly situated to him because the tobacco ban applies across the board at MOCC.  <u>Id.</u>

Defendants' argument addresses only one of Plaintiff's claims (use of tobacco).  Plaintiff asserts that access to music and receipt of spiritual materials are areas in which Defendants treat

13

him differently than similarly situated Christian inmates.

The undersigned proposes that the presiding District Judge **FIND** that Plaintiff has stated a claim upon which relief may be granted under the Equal Protection Clause of the Fourteenth Amendment.

Plaintiff's claim of a violation of his due process rights relates to his use of the grievance process and the lack of an impartial reviewer of his grievances and religious request forms. The Constitution (particularly the Due Process Clause) creates no entitlement to grievance procedures or to an impartial reviewer of requests and grievances. See Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991); Adams v. Rice 40 F.3d 72, 75 (4th Cir. 1994).

The undersigned proposes that the presiding District Judge **FIND** that Plaintiff has failed to state a claim upon which relief may be granted under the Due Process Clause of the Fourteenth Amendment.

<u>Retaliation</u>

Plaintiff's Complaint alleges that defendants Ballard, McCloud and Sotak have retaliated against him for filing multiple grievances, by seizing and destroying his mail and magazines, and by filing disciplinary charges against him. (Complaint, # 2, at 12.)

As noted above, an inmate has no constitutional right to participate in the grievance process.

> [C]laims of retaliatory actions are legally frivolous unless the complaint implicates some right that exists under the Constitution.  That is, [a] plaintiff[] must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right.  A claim of retaliation that fails to implicate any constitutional right "lacks even an arguable basis in law," [Neitzke v. Williams, 490 U.S. 319,] 328 [(1989)], and is properly subject to dismissal under § 1915(d).

Adams, 40 F.3d at 75.

The undersigned proposes that the presiding District Judge **FIND** that Plaintiff has failed to state a claim for retaliation upon which relief may be granted because his participation in the grievance process is not constitutionally protected.

American Indian Religious Freedom Joint Resolution

The American Indian Religious Freedom Act ("AIRFA"), 42 U.S.C. § 1996 et seq., Pub. L. 95-341, passed August 11, 1978, and amended in 1994, protects and preserves the traditional religious and cultural practices of American Indians, Eskimos, Aleuts and Native Hawaiians.  It is limited to American Indians, Native Alaskans and Hawaiians located within the boundaries of the United States.  AIRFA has no application to Taino, Arawak or Boriken practices.  Moreover, AIRFA does not create rights enforceable against government action restricting religious freedom and it does not create any cause of action.  Lyng v. Northwest Indian Cemetery Protective Ass'n, 485 U.S. 439, 454 (1988).

The undersigned proposes that the presiding District Judge **FIND** that Plaintiff has failed to state a claim upon which relief

may be granted under AIRFA.

Absolute and Qualified Immunity

Plaintiff has sued the defendants in their official and individual capacities. (Complaint, # 2, at 1.) RLUIPA does not authorize a claim for money damages against an official in his or her official capacity. Madison v. Virginia, 474 F.3d 118, 133 (4th Cir. 2006). It is well-settled that state officials sued in their official capacities are not "persons" within the meaning of 42 U.S.C. § 1983. Will v. Michigan Dep't of State Police, 491 U.S. 58, 70-71 (1989). The undersigned proposes that the presiding District Judge **FIND** that Plaintiff has failed to state a claim upon which relief may be granted for money damages as to any defendant in his or her official capacity.

Plaintiff asserts that he has standing to raise a claim under RLUIPA because the West Virginia Division of Corrections and MOCC receive federal funding. (Complaint, # 2, at 10.) In Rendelman v. Rouse, 569 F.3d 182, 189 (4th Cir. 2009), the Fourth Circuit held that a prisoner cannot rely on RLUIPA's spending clause basis to pursue a claim for individual capacity damages. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Plaintiff has failed to state a claim upon which relief may be granted for individual capacity damages for his RLUIPA claim against the defendants.

16

## Recommendation

It is respectfully **RECOMMENDED** that Defendants' motion to dismiss (# 14) be granted with respect to Plaintiff's due process, retaliation, and AIRFA claims, as to Plaintiff's claims for money damages as to all defendants in their official capacities, and as to Plaintiff's claim for money damages for any RLUIPA violation as to all defendants in their individual capacities, and denied with respect to Plaintiff's RLUIPA and equal protection claims. This action should go forward as to declaratory and injunctive relief on Plaintiff's RLUIPA and § 1983 claims and for money damages as to the defendants in their individual capacities on Plaintiff's § 1983 claims.

The parties are notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendation" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendation" to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of <u>de</u> <u>novo</u> review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. <u>Snyder v. Ridenour</u>, 889 F.2d 1363 (4th Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to Judge Copenhaver.

The Clerk is directed to file this "Proposed Findings and Recommendation," to mail a copy of the same to Plaintiff, and to transmit it to counsel of record.


<u>August 19, 2010</u>
         Date

                                    *Mary E. Stanley*
                              Mary E. Stanley
                          United States Magistrate Judge